IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

STACY STROBL and
BRIAN HARDING,

    Plaintiffs,

v.                                   No. 1:24-cv-140

PAUL CROFT, et al,

    Defendants.

## DEFENDANT BRIAN KAWAMURA'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Comes Defendant Brian Kawamura, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) and moves this Honorable Court to dismiss Defendant Kawamura from this action due to Plaintiffs' failure to state a claim upon which relief may be granted because Plaintiffs have failed to meet the pleading standard required by Fed. R. Civ. P. 9(b).

### Introduction

This action is brought on behalf of Plaintiffs Stacy Strobl and Brian Harding and others similarly situated who invested funds in entities set up by Paul Croft and Jonathan Frost, allegedly to fund Rhino Onward International, LLC. Brian Kawamura was the CEO of Rhino Onward International, LLC, an Illinois entity with its principal place of business located in Chicago. It is alleged in the Complaint that Frost and Croft, in association with various Funds established and controlled by Frost and Croft, "routinely promised that Rhino Onward International had the engineering, land development, and scientific expertise to launch an operational green energy

hydrogen producing plant." [Doc. 1, Complaint at ¶ 3, ¶5]. It is further alleged that Rhino Onward International did not have such expertise, capability, or intent to launch such a plant and that ROI was never going to launch green energy operations. *Id*. It is further alleged that Frost, Croft, Brian Kawamura, and Dira knew or should have known this. *Id*. The core allegations of the Complaint center on the fraudulent activities of Frost and Croft in obtaining investor's money under the pretense that it was going to be used to develop a green energy hydrogen producing plant but using it for enrich themselves personally and funding other operations in which they were involved. [Doc. 1, Complaint at ¶4, ¶¶ 6-9].

It is Mr. Kawamura's position that the specific allegations about Mr. Kawamura's connection to Frost & Croft's alleged scheme do not plead fraud with sufficient particularity to sustain Count III (Civil Conspiracy) and Count VII (RICO Violation), the only Counts asserted against him, and therefore, the Complaint fails to state a claim upon which relief can be granted and should be dismissed as to Mr. Kawamura.

## A Heightened Pleading Standard Applicable to allegations of Fraud

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Whiters v. Baker*, No. 23-cv-12161, 2024 U.S. Dist. LEXIS 74769, at *4-5 (E.D. Mich. Apr. 24, 2024) (quoting *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

To assert an action for fraud, a Plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent

of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).

Rule 9(b) requires a plaintiff "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 493-94 (6th Cir. 2019)(citing *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) and *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009)). This requires "not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter" and must set forth specific facts that indicate reasonable belief that the defendant knew a statement was materially false or misleading. *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 406 (6th Cir. 2012) (internal citations omitted.)

The particularity requirement also applies to a civil RICO complaint alleging mail or wire fraud, requiring a Plaintiff to "state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact." <u>HPIL Holding, Inc. v. Zhang</u>, No. 1:23-cv-12050, 2024 U.S. Dist. LEXIS 91024, at *42 n.11 (E.D. Mich. May 21, 2024).The Court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citing *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006).

### **Allegations in the Complaint Relevant to Mr. Kawamura and the Alleged Fraud**

The Complaint makes limited references to Mr. Kawamura, who is named a Defendant only in Count III (Civil Conspiracy) and Count VII (RICO). Relevant allegations pled regarding

Mr. Kawamura include that he was the CEO of Rhino Onward International, LLC.[1] "Mr. Kawamura's role in this case directly relates to his numerous interactions with Jonathan Frost. Upon information and belief, Mr. Kawamura traveled to Tennessee as part of his work with Rhino Onward International." [Doc. 1, Complaint ¶23.]

The Complaint also alleges Mr. Kawamura:

> Kawamura at all relevant times acted as the Chief Executive Officer of ROI. He was paid a salary. He also was involved in the Solarcode venture previously launched by Frost. Kawamura joined at least one of these investor calls and witnessed Frost and Dira's promises about ROI's operations. Kawamura knew or should have known that Frost's claims during this investment call were materially false and misleading and omitted material information about the safety and security of such an investment. Kawamura nevertheless said nothing and instead never joined another call. As CEO he had a duty and obligation to track where and how Frost raised money for RIO and the representation he made to investors. Kawamura instead stuck his head in the sand and let Frost proceed to use ROI in his scheme to dupe investors into investing in ROI.

*Id.* at ¶92.

Inconsistently, a few paragraphs later the Complaint alleges greater participation in "on at least two investment calls when Frost and/or DIRA made representations about ROI's business operations and its alleged green energy plants." *Id.* at ¶100.

The Complaint continues:

> At all times, Kawamura knew or should have known that the promises Frost was making to investors were not achievable. Kawamura nevertheless continued in his role as CEO and provided veneer to Frost concerning the alleged business operations of ROI. Kawamura knew or should have known and as CEO of ROI had a duty to know that Frost and Dira were using ROI's image and business model to secure funding from investors. Kawamura as CEO had a duty to ensure that those funds being raised by Frost and Dira and others were used for ROI's business operations and were placed in RO I's operating account to be used solely for RO I's business operations. Kawamura failed to ensure this happened and instead allowed

---

[1] Not to be confused with the broader category of ROI Defendants referenced throughout the Complaint, which include Rhino Onward International, LLC, but not Mr. Kawamura individually.

> Frost to divert these funds to his own personal use and to fund CF and Frost's other business ventures.

*Id.*

Regarding the RICO conspiracy the Complaint alleges:

> Frost, Croft, Dira and Kawamura were business partners and knowingly and/or intentionally worked together, and agreed to conspire together, to willfully, maliciously, and unlawfully injury Plaintiffs and the Class by duping investors into making investments into ROI even though ROI never had a legitimate business operation and had not real plan to launch a green energy project that would generate any revenue or profit.
>
> Instead Frost and Croft with the help of Dira, Kawamura, and others including John Does 1/25, acted to make false representations to Plaintiffs and the Class in order to dupe investors into sending money to companies controlled by Frost and Croft.

*Id.* at ¶¶148-149.

Finally, the Complaint asserts Mr. Kawamura was acting as an agent of the ROI Defendants and that his conduct and others as alleged "was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. *Id.* at ¶¶154-155. Kawamura received a salary for his time working with Rhino Onward International, LLC and was paid with investor money." *Id.* at ¶157.

## On Its Face the Complaint Fails to Plead with Particularity as is Required for Claims Based Upon Fraud

The Complaint fails to meet the particularity and specificity required for causes of action sounding in fraud under the authority cited above. Plaintiffs allege no statement made by Mr. Kawamura at all, much less one made by him that he knew was false. Plaintiffs do not allege that date, time, place, or substance of any alleged statement by Mr. Kawamura. They allege only that he was present on one, or possibly two investor calls, wherein Frost or Croft made statements that Plaintiffs generally aver were false. *Id.* at ¶92. Plaintiffs do not plead the time, date, or place where

5

the calls were made and at no time allege that Mr. Kawamura made *any* communication to Plaintiffs on the vaguely referenced calls. This falls far short of the particularity required by Fed. Rule Civ. Pro. 9(b).

Plaintiffs plead no facts as to Mr. Kawamura's knowledge of any alleged false statement made by Frost, Croft, Dira, and/or anyone else who may have made statements in the alleged calls. They rely merely on Mr. Kawamura's role as CEO of Rhino Onward International for the proposition that alleged statements made by others were, in fact, false and that Mr. Kawamura should have known that and taken some action as a result. Although, Plaintiffs allege in one paragraph of the Complaint that Mr. Kawamura was a business partner of Frost and Croft, *Id.* at ¶ 148, without any factual support for that contention, in contradiction to that assertion, they also allege that he was paid a salary for his position as CEO of Rhino Onward International. *Id.* at ¶157. The fact that Mr. Kawamura was an employee of Rhino and may have been on an unidentified call or calls with potential investors where Frost, Croft or others sought investment into the ROI Funds or other funds controlled by those two individuals does not permit a reasonable inference that Kawamura knew or any such statements were false. Absent the required particularity, the Complaint fails to plead the underlying fraud.

"[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Farah v. Fannie Mae*, No. 14-1582, 2015 U.S. App. LEXIS 23764, at *8 (6th Cir. June 19, 2015) quoting *Advocacy Org. for Patients & Providers v. Auto Club. Ins. Ass'n*, 257 Mich. App. 365, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003). Because the Plaintiffs have failed to plead sufficient facts with particularity against Mr. Kawamura for fraud, their claim for civil conspiracy with the object to defraud must fail.

Likewise, a civil RICO violation relying upon a claim of mail or wire fraud, as alleged in the Compliant, must also fail where the false statement of fact made by the Defendant, upon which the plaintiff relied, and the resulting harm are not pled with particularity. Again, because the Plaintiffs have failed to plead the underlying fraud with particularity, they have failed to state a claim for a civil RICO violation upon which relief can be granted. *See HPIL Holding, Inc. v. Zhang,* 2024 U.S. Dist. LEXIS 91024 at *42 (E.D. Mich. May 21, 2024) (citing *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999)).

## Certification of Meet to Confer

Pursuant to this Court's Order Governing Motions to Dismiss, Doc. 6, counsel for Mr. Kawamura, met and conferred with counsel for the Plaintiff's on July 9, 2024, to discuss Defendant Kawamura's concerns regarding failure to plead with particularity as well as whether the allegations in the Compliant were sufficient to confer personal jurisdiction over Mr. Kawamura. The parties were unable to agree that the Complaint is curable by a permissible amendment.

## Conclusion

For the above reasons, Mr. Kawamura moves this Court to Dismiss the Complaint against him in so far as it pursues causes of action against him.

Respectfully submitted this 16th day of July 2024.

*s/ Loretta G. Cravens*
DAVID M. ELDRIDGE (BPR # 012408)
LORETTA G. CRAVENS (BPR #023576)
ELDRIDGE & CRAVENS, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, TN 37902
(865) 544-2010
deldridge@ecattorneys.law
lcravens@ecattorneys.law
*Attorneys for Brian Kawamura*