# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

STACY STROBL and BRIAN
HARDING, on behalf of themselves and
all others similarly situated,

                Plaintiffs,

      v.

PAUL CROFT; JONATHAN FROST;
RHINO ONWARD INTERNATIONAL,
LLC; ROI FUND I, LLC; ROI FUND II,
LLC; ROI FUND III, LLC; ROI FUND
IV, LLC; BRIAN KAWAMURA; CROFT
& FROST, PLLC; THE WELL FUND
LLC; SCORPIO REF, LLC; MATTHEW
DIRA; THE DIRA GROUP; CHESTNUT
HOLDINGS, LLC; STEPHEN FROST;
LISA FROST; JOSEPH
INVESTMENTS, LLC; JANE and
JOHN DOES 1-25,

                Defendants.

Case No. 1:24-cv-140

District Judge: Curtis L Collier
Magistrate Judge: Christopher H
Steger

## CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS FILED BY MATT DIRA, DIRA GROUP, AND BRIAN KAWAMURA

Plaintiffs file this Consolidated Opposition to the three motions to dismiss (DE# 49, 51 and 52) filed by Defendants Matt Dira ("Dira"), the Dira Group, and Brian Kawamura ("Kawamura"). Given the overlap of the issues Plaintiffs believe a consolidated response would ease the Court's burden to ensure that no duplicative factual or legal arguments are made.

## FACTUAL BACKGROUND

### I. Rhino Onward International, LLC Never Had Legitimate Business Operations And Is At The Center Of A Largescale Fraud Perpetrated Against Plaintiffs And The Putative Class.

Rhino Onward International, LLC ("ROI"), falsely claimed to "create[] the greenest and cleanest cradle-to-grave renewable energy by harvesting Solar Energy and brackish (non-potable) water to generate electricity, green hydrogen, and clean water."[1] ROI never created any electricity and never had any actual green hydrogen operations.[2]

In reality, ROI was simply an ongoing part of a conspiracy concocted by defaulting defendant Jonathan Frost ("Frost") and Paul Croft ("Croft") to enrich themselves and their business partners. Frost and Croft used many shell corporations to manipulate investors into believing Frost and Croft held the keys to magic investment opportunities that would guarantee large returns in a short and defined period of time.[3]

---

[1] DE# 1, Complaint ¶ 2 at PageID 2.
[2] *Id.*
[3] *Id.* at ¶ 6 at PageID 4.

1

Frost and Croft instead took the investments made by the Plaintiffs and the putative class and diverted these funds to other operations including paying for payroll at their floundering and eventually failing accounting firm and pocketed money for their own personal use.[4]

Central to this scheme was also the now-defunct accounting firm, defendant Croft &Frost PLLC ("hereinafter "Croft & Frost") ostensibly run by Croft and Frost. Croft & Frost's clients became targets of the ROI investment scheme and many victims began their relationship with Croft and Frost through this accounting firm.[5]

This scheme was short-lived and was doomed to fail, and it did. Croft & Frost eventually became unsustainable and closed its doors abruptly in September of 2023.[6] Rhino Onward International has similarly shuddered and it has no current ongoing operations or leadership structure.[7] The Well Fund LLC removed Frost from his manager role and is trying to locate the funds he diverted into the various shell companies he controlled.[8]

## II. Defendant Brian Kawamura Was ROI's CEO And Should Bear Responsibility For The Fraud Perpetrated Against Plaintiffs And The Putative Class.

---

[4] *Id.* at ¶¶ 9, 58-64 at PageID 4, 16-17.
[5] *Id.* at ¶ 7 at PageID 4.
[6] *Id.* at ¶ 9 at PageID 4-5.
[7] *Id.*
[8] *Id.*

2

At all relevant times Brian Kawamura was ROI's Chief Executive Officer.[9] As CEO he knew or should have known that ROI was never going to launch any green energy projects.[10]

Although Mr. Kawamura lives in Chicago, he partnered in the ROI venture with defaulting Defendant Frost and had regular and routine business contacts with Frost while Frost lived and worked in Tennessee.[11] Frost and Croft with the aid of Dira and others defrauded investors over $40 million through the ROI Defendants, the Well Fund and other shell companies ostensibly meant to fund the ROI venture, which never had and was never going to have a legitimate business operation.[12]

As CEO of ROI, Kawamura joined at least one investor call with defaulting Defendant Frost and co-defendant Dira where Frost and Dira made false claims about ROI operations including that:

    a.    recent changes to the tax code would allow a company like ROI to obtain lucrative tax credits for launching green energy and hydrogen focused energy products;

    b.    an Israeli company would soon be coming on board to provide a huge infusion of cash that would allow early investors in ROI to achieve 20% annual returns on investment;

---

[9] *Id*. at ¶¶ 3, 92 at PageID 3, 22.
[10] *Id*. at ¶ 5 at PageID 3.
[11] *Id*. at ¶ 23 at PageID 7.
[12] *Id*. at ¶¶ 10, 85-100 at PageID 5, 22-25.

3

c.    ROI had negotiated with a Native American tribe in Arizona the lease on land for ROI to construct a large hydrogen/green energy plant; and

d.    ROI would have a hydrogen/green energy plant online by 2025.[13]

As CEO, Kawamura had a duty and obligation to ensure that Frost and co-defendant Dira accurately portrayed the operations of ROI, which Kawamura knew or should have known they were not doing.[14] He was responsible for these representations and Plaintiffs and others in the putative class relied upon them to their detriment.[15]

### III.    Defendant Matt Dira As Executive Vice President Of Client Relations At Croft & Frost Knew That ROI Was A Massive Fraud And Should Bear Responsibility For The Fraud Perpetrated Against Plaintiffs And The Putative Class.

Matt Dira lives in Virginia and runs an unincorporated business called the Dira Group, which was intimately involved in the ROI fraud.[16] Dira also acted as the Vice President of Client Relations for the now defunct Croft & Frost accounting firm.[17]

Through his work with the accounting firm, Dira knew when potential investors received refund checks from the IRS and worked with Frost to reach out to the accounting firm's clients and offer investments in Frost's investment schemes

---

[13] *Id*. at ¶¶ 89-92 at PageID 21-23.
[14] *Id*. at ¶¶ 92, 100 at PageID 22-23, 25.
[15] *Id*. at ¶¶ 130-133 at PageID 32-33.
[16] *Id*. at ¶¶ 5, 27-28 at PageID 3, 8.
[17] *Id*. at ¶ 27.

4

with the newly arrived cash.[18] Dira would also promise investors that these schemes were safe and would generate high rates of guaranteed annual returns.[19]

Dira was particularly involved in selling ROI as a legitimate company by falsely making claims about ROI's business operations that were simply not true.[20] Dira, working with Frost, repeatedly made these statements on monthly investment calls with individuals that invested into ROI and potential investors.[21] The stated purpose of these investment calls were to give investors "updates" on the business operations of ROI but in reality they worked as a mini-sales presentation meant to encourage investors to send Frost even more money. [22]

## IV. Unfortunately, Frost's Sales Pitches Worked And Duped Plaintiffs And The Putative Class Into Investing Millions Of Dollars In These Doomed Ventures.

Class Representative Strobl invested in ROI through a feeder fund set up by Frost.[23] To continue to dupe investors into believing that investments in these feeder funds were really investments in ROI, Frost and others would put together "Account Statements" showing the maturity date and interest rates applicable to these investments and put them on ROI letterhead.[24] This document further notes that if anyone had any questions to call Dira and provided his phone number.[25]

---

[18] *Id.* at ¶ 54 at PageID 15.
[19] *Id.* at ¶ 69 at PageID 18.
[20] *Id.* at ¶¶ 88-8 at PageID 21-22.
[21] *Id.* at ¶ 91, 96 at PageID 22, 24.
[22] *Id.*
[23] *Id.* at ¶ 101 at PageID 25.
[24] *Id.* at ¶ 102 at PageID 25-26.
[25] DE#1-5, Account Statement at PageID 71.

5

Class Representative Brian Harding invested in ROI through Scorpio and like Plaintiff Strobl relied upon the misrepresentations regarding the ROI business made by Frost, Dira, and Kawamura.[26] He lent Scorpio $25,000 with the note becoming due on November 21, 2022 and Scorpio has defaulted on this note.[27]

## V. Plaintiffs Pursue Claims Against Dira And Kawamura For Their Role In The ROI Fraud.

As a result of the actions Dira and Kawamura took in perpetuating the fraud against the Plaintiffs and the putative class, Plaintiffs assert the following causes of action against Dira (and the Dira Group) and Kawamura:

**Count I**: Fraud alleging that Dira and Kawamura in conjunction with Croft and Frost misled investors on the nature of the ROI venture by falsely claiming that it was a legitimate green energy company when it had no such operations.[28]

**Count II**: Civil conspiracy alleging that Dira and Kawamura along with all defendants engaged in a civil conspiracy by duping investors into believing that ROI had a legitimate business operation when it had none.[29]

**Count VII**: Racketeer Influenced and Corrupt Organizations Act ("Civil RICO") against Dira and Kawamura along with all other defendants alleging that the ROI investment scheme and the numerous corporate entities and individuals that perpetuated it violated federal racketeering law.[30]

---

[26] DE#1, Complaint at ¶¶ 131-133 at PageID 32-33.
[27] *Id.* at ¶ 103 at PageID 26.
[28] *Id.* at ¶¶ 128-137 at PageID 41-44.
[29] *Id.* at ¶¶ 146-159 at PageID 36-38.
[30] *Id.* at ¶¶ 198-213 at PageID 45-48.

6

## STANDARD OF REVIEW

### I.    Standard Of Review For Rule 12(b)(2) Motion.

"In deciding a motion to dismiss for lack of personal jurisdiction, the district court may rely 'upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.'" *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)). "Although plaintiffs have the burden of establishing that a district court can exercise jurisdiction over the defendant, that burden is 'relatively slight' where, as here, the district court rules without conducting an evidentiary hearing." *Id.* quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

"To defeat dismissal in this context, plaintiffs need make only a prima facie showing that personal jurisdiction exists." *Id.* citing *Air Prods.*, 503 F.3d at 549. "Under these circumstances, this court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff and will construe the facts in the light most favorable to the nonmoving party in reviewing a dismissal pursuant to Rule 12(b)(2)." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Plaintiff can meet this burden by "establishing with reasonable particularity sufficient contacts between [Stine] and the forum state to support jurisdiction." *Id.*

In a diversity case, federal court looks to the law of the forum state to determine whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). Personal jurisdiction over the defendant generally exists if the

7

defendant is amenable to service of process under the forum state's long-arm statute, and if the exercise of personal jurisdiction would not deny the defendant due process. *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994). "In Tennessee, the long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause." *Cupp v. Alberto-Culver USA, Inc.*, 308 F. Supp. 2d 873, 877 (W.D. Tenn. 2004); *see* Tenn. Code Ann. § 20–2–214(a)(6) (2004).

Consistent with the Due Process Clause, a court may exercise personal jurisdiction over a defendant so long as that defendant has "certain minimum contacts" with the forum such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

Personal jurisdiction may be either general or specific, depending on the nature of the defendant's contacts with the forum. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir.1992). General jurisdiction arises when a defendant's contacts with the forum are of such a "continuous and systematic nature" that the court may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the forum. *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989).

Specific jurisdiction arises when the defendant has sufficient minimum contacts that arise from or are related to the cause of action. The plaintiff must establish that (1) the defendant purposefully availed himself of the privilege of acting in the forum or intentionally caused a consequence in the forum, (2) the cause of

8

action arose from the defendant's activities in the forum, and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable. *See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir.1998); *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). Purposeful availment is the most important criterion. *See Kerry*, 106 F.3d at 150.

## II. Standard Of Review For Rule 12(b)(6) Motions.

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) ("The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint. A complaint therefore 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "The complaint must thus "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) quoting *Eidson v. Tenn.*

9

*Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir.2007). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" to prevent a motion to dismiss. *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir. 2008). Dismissal is appropriate when the plaintiff has not alleged facts that "state a claim to relief that is plausible on its face" and has failed to "raise a right to relief above the speculative level." *Gavitt v. Born,* 835 F.3d 623, 640 (6th Cir. 2016) (quoting *Twombly*, 550 U.S. at 554, 555, 127 S. Ct. 1955).

Moreover, Rule 9(b) of the Federal Rules of Civil Procedure requires that, when pleading fraud, "a party must state with particularity the circumstances constituting fraud." While Rule 9(b) imposes a heightened standard, "Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. Rule 9(b), however, also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotations and citations omitted). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.*

## ARGUMENT

**I.    The Complaint Contains Sufficient Detail For This Court To Exercise Personal Jurisdiction Over Dira And Kawamura.**

10

### A. RICO's Nationwide Service Of Process Allows This Court To Exercise Personal Jurisdiction Over Dira And Kawamura Under Clear Sixth Circuit Precedent.

Plaintiffs have alleged Civil RICO violations against both Dira and Kawamura.[31] The federal RICO statute provides for nationwide service of process. 18 U.S.C. § 1965.

The Sixth Circuit recently adopted the forum-state approach as it relates to the scope of nationwide service of process in Civil RICO cases. *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 440 (6th Cir. 2022). Under this approach "[w]hen a plaintiff brings a civil RICO action in a district court where personal jurisdiction can be established over at least one defendant, nationwide summonses can be served on other defendants if required by the ends of justice."[32] *Id*.

Dira, the Dira Group, and Kawamura meet the criteria for personal jurisdiction under Civil RICO. The requisite national contacts are not reasonably in dispute.[33]

The "ends of justice" requirement is also easily satisfied. "In deciding when the 'ends of justice require' national service, courts are to consider the legislative history of RICO. Courts have found that Congress intended the 'ends of justice' language to

---

[31] DE# 1, Complaint at ¶¶ 198-213 at PageID 46-48.

[32] Plaintiffs can easily establish personal jurisdiction over one defendant as numerous defendants in this case are Tennessee residents. DE# 1, Complaint at ¶¶ 17, 19-22, 25 at PageID 6-7.

[33] DE# 50 (establishing that Dira and Dira Group live and operate in Virginia); DE# 1, Complaint at ¶¶ 198-213 at PageID 46-48; DE#1, Complaint at ¶ 23 at PageID 7 (alleging Kawamura lives in Illinois, which Kawamura does not appear to dispute).

11

provide a means for 'plaintiffs to bring all members of a nationwide RICO conspiracy before the court in a single trial." *Iron Workers*, 23 F. Supp. 2d at 803 (citing *LaSalle Nat'l Bank v. Arroyo Office Plaza, Ltd*., No. 87-cv-463, 1988 WL 23824, at *3 (N.D. Ill. Mar. 10, 1988)).

Here, Plaintiffs are victims of a widespread fraud perpetrated by companies in Illinois and Tennessee and these RICO defendants should not be permitted to require Plaintiffs to pursue these interrelated claims in multiple forums. Under *Peters Broad.* they are not required to do so.

Put simply, had Kawamura and Dira not wanted to be hauled into Tennessee federal court, they should not have undertaken a widespread fraud with Tennessee citizens and Tennessee domesticated corporations.

### B. Dira Has Sufficient Minimum Contacts Regardless Of The Application Of RICO's Nationwide Service Of Process.

Regardless of whether the RICO national service of process statute provides jurisdiction over Dira (which it does), Dira cannot escape the exercise of personal jurisdiction over him. He readily admits that he worked for Croft & Frost, the accounting firm based in Chattanooga Tennessee.[34] The causes of action asserted against him derive directly from this work and his other actions with Frost (another Tennessee resident). Moreover, one of the victims in this case, Plaintiff Strobl is a Tennessee resident, meaning Dira's actions had a direct consequence of causing damage within this state.

_____

[34] DE# 50 at ¶ 8 at PageID 338.

This is sufficient to establish specific jurisdiction over Dira for purposes of this case. *Sledge v. Indico Sys. Res., Inc.,* 68 F. Supp. 3d 834, 840-46 (W.D. Tenn. 2014) (finding personal jurisdiction under Tennessee long-arm statute over Texas company and its president who participated in fraud that injured Tennessee citizens).

In fact, some courts have found that even when workers work remotely, the employment relationship with a forum defendant is sufficient to establish specific personal jurisdiction in the forum state where the business is located. *Env't 360, Inc. v. Walker*, No. 3:22-CV-00606, 2024 WL 330826, at *4 (M.D. Tenn. Jan. 29, 2024).[35]

### C. Kawamura Has Sufficient Minimum Contacts Regardless Of Application Of RICO's Nationwide Service Of Process.

Regardless of whether the RICO national service of process statute provides jurisdiction over Kawamura (which it does), Kawamura cannot escape the exercise of personal jurisdiction over him.

Kawamura mainly alleges that the Complaint fails to establish a *prima facie* case of personal jurisdiction over him and, unlike Dira, he provides no affidavit whatsoever providing testimony as to how he failed to purposefully avail himself of the forum.

_____

[35] Finally, Dira has submitted an affidavit where he testifies about actions he did not take in Tennessee. This affidavit, however, does not claim that he never travelled to Tennessee as part of his work with Frost. If the Court is concerned about personal jurisdiction, Plaintiffs respectfully request leave to take a short personal jurisdiction deposition of Dira to determine if he traveled to Tennessee for his work with Frost and the accounting firm. If he did, that would clearly establish this Court's ability to exercise jurisdiction over him. *See MCNIC Oil & Gas Co. v. IBEX Res. Co.,* 23 F. Supp. 2d 729, 735 (E.D. Mich. 1998) (holding that a court can exercise personal jurisdiction over an out of state defendant based on multiple trips into the forum state).

13

Regardless, the Complaint clearly establishes that he had repeated contacts with Tennessee resident Frost in pursuit of the widespread fraud that constituted the company that Kawamura led. [36] These contacts included Kawamura attending investor calls and working throughout ROI's existence with Frost (a Tennessee resident) and aiding and abetting Frost's fraudulent misrepresentations of ROI's business enterprise (or lack thereof). [37] The Complaint alleges that Kawamura traveled to Tennessee numerous times in his ongoing business relationship with Frost, an allegation that Kawamura does not dispute. [38] Like Dira, these actions had a direct impact in this state because Plaintiff Strobl resides in this state and was damaged by Kawamura's conduct.

In short, Kawamura launched a fake business enterprise conspiring with a Tennessee resident and traveled to and made representations into Tennessee to perpetrate this fraud that injured at least one resident of Tennessee (named Plaintiff Strobl).

This is sufficient to establish specific jurisdiction over Kawamura for the purposes of this case. *Sledge* 68 F. Supp. 3d 834 at 840-46.[39]

## II. The Complaint States A Claim For Fraud, Civil Conspiracy, And RICO Violations Against Dira And Kawamura.

---

[36] DE# 1, Complaint at ¶¶ 3, 23, 92, 100, 148 at PageID 3, 7, 22, 25, 36.
[37] *Id*.
[38] *Id*. at ¶ 23, PageID 7.
[39] To the extent that the Court continues to have concerns about personal jurisdiction over Kawamura, Plaintiffs respectfully request leave to take a short personal jurisdiction deposition of Kawamura to fully flesh out the number of times he engaged in calls, emails, and travels to Tennessee in his ongoing business relationship with Frost.

14

## A. The Complaint Satisfies The Heightened Pleadings Standards of Rule 9(b).

Both Dira and Kawamura also move to dismiss the Complaint on specious grounds that the Complaint fails the particularity requirements of Rule 9(b). As has been made repeatedly clear, this case is ultimately about a simple fraud: Croft, Frost, Dira, and Kawamura (and others) repeatedly claimed that ROI was a sophisticated green energy company ready and able to take advantage of changes to the tax code to unleash guaranteed returns for early investors.[40] In reality, ROI had no legitimate business operations, was never going to launch any green energy endeavors, and lacked the technical, managerial, and operational capacity to actually run any green energy project.[41]

Dira and Kawamura both participated in these pitches to investors like Plaintiffs and the putative class promising ROI would lead to green energy riches when they both knew or should have known that these claims were utter nonsense.[42]

The Complaint is replete with allegations of the "who, what, when" required by Rule(9)(b):

> **Who**: Croft, Frost Dira, and Kawamura and others made repeated claims to investors that were false.[43]

---

[40] DE# 1, Complaint at ¶¶ 2-11, 173-174 at PageID 2-5, 41.
[41] *Id*.
[42] DE# 1, Complaint at ¶¶ 85-93 at PageID 20-23.
[43] *Id*.

15

**What**: All claimed that ROI would deliver green energy hydrogen production that would guarantee investors high rights of return in short period of time when in reality ROI never had any legitimate business operations.[44]

**When**: These claims were made on investor calls, on ROI's website, and on ROI's "account statements."[45]

Importantly, as the Complaint details, Frost has already admitted in resolving his complaint before Tennessee regulatory agencies that he defrauded investors as part of the schemes related to his operations of his accounting firm.[46] ROI, the accounting firm, and the numerous feeder funds where investors sent money have all ceased operations and are now defunct.

In other words, Dira and Kawamura cannot reasonably contest the central allegation of this scheme: ROI was a fraud from the beginning and was meant to dupe investors out of their hard earned money. Dira and Kawamura were high level executives that should bear responsibility for this massive fraudulent scheme.

Dira and Kawamura's desperate attempt to use Rule 9(b)'s technicalities to save them from their intricate role in the fraud perpetrated by their co-conspirators should be denied as the Complaint easily satisfies the particularity requirements of Rule 9(b).[47]

---

[44] *Id.*
[45] *Id.*; *see also* DE# 1-5.
[46] DE# 1-7.
[47] *See e.g.*, *Monaco Indus., LLC v. Fomento Econ. Mexicano S.A.B. de C.V.*, 685 F. Supp. 3d 654, 673–74 (E.D. Tenn. 2023) (denying motion to dismiss under Rule 9(b) where Complaint detailed the identity of "Defendants" even if not the individual corporate employee, alleged fraudulent conduct including dates the conduct occurred and the substance of the conduct, and attached the communications at issue as

16

### B. The Complaint States A Claim For Civil Conspiracy Against Dira and Kawamura.

Both Dira and Kawamura make a final attempt to get the civil conspiracy and dismissed against them claiming that because Plaintiffs fail to satisfy Rule 9(b) under Count I. As discussed above, the premise of this assertion is wrong as Plaintiffs clearly satisfy Rule 9(b) as to both Dira and Kawamura.[48]

Regardless, the civil conspiracy claims should move forward.

The elements of a civil conspiracy are: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury. *B&L Mgmt. Grp., LLC v. Adair*, No. 17-2197, 2019 WL 3459244, at *10 (W.D. Tenn. July 31, 2019).

---

exhibits because it sufficiently plead the who, what, when, where, and how required under 9(b))); *City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1337–39 (E.D. Tenn. 2016) (denying motion to dismiss based on Rule 9(b) where Complaint provided Defendants with "sufficient notice of the misrepresentation" so that they can answer "in an informed way" when it included the content of the misrepresentations and tethered them to the approximate time they occurred including month and year, the records supporting these allegations were within Defendants own control, explained why the statements were fraudulent, and included an amount of monetary damages.); *Bridgestone Am.'s, Inc. v. Int'l Bus. Machines Corp.*, 172 F. Supp. 3d 1007, 1018 (M.D. Tenn. 2016) (denying motion to dismiss based on Rule 9(b) in part where Plaintiff pleaded sufficient facts to survive its allegations that Defendant engaged in unfair and deceptive acts and practices violating the Tennessee Consumer Protection Act and that Plaintiff suffered damages as a result).

[48] Plaintiffs maintain that the Dira Group is also liable for Dira's actions, a position that the Dira Group does not appear to challenge.

There is no doubt that Frost himself committed the underlying fraud at the center of the ROI fraud conspiracy.[49] There is no requirement under civil conspiracy law that all members of a civil conspiracy also commit acts of fraud but rather civil conspiracy requires an agreement to accomplish an unlawful purpose. *See B&L* 2019 WL 3459244, at \*10-11. Neither Dira or Kawamura claim that the complaint fails to plead such an agreement or that the ROI fraud conspiracy was in fact action in pursuit of an unlawful purpose by unlawful means, nor could they. The whole company was designed to lie to investors and defraud them of their money. Sadly, it worked.

As a result, Plaintiffs have sufficiently plead a claim for civil conspiracy against Dira and Kawamura because they have adequately plead they engaged in a common scheme to accomplish an unlawful purpose that was operational and resulted in injury. *B&L Mgmt. Grp., LLC v. Adair*, 2019 WL 3459244, at \*10-11.

### C. The Complaint States A Claim For Civil Conspiracy Against Dira and Kawamura.

Dira and Kawamura both make similar claims as to why the civil RICO claim should also be dismissed, namely that because Plaintiffs cannot show they themselves committed fraud under the heightened pleading standards of Rule 9(b), the civil RICO claims must also fail. Plaintiffs satisfy Rule 9(b) and therefore moot this argument but Plaintiffs will address one issue raised in the Civil RICO briefing.

---

[49] DE# 1, Complaint at ¶¶ 85-93 at PageID 20-23; DE# 1-7.

18

To proceed beyond a motion to dismiss on a Civil RICO claim, a plaintiff must plausibly allege, that the defendant: (i) conducted, (ii) an enterprise, (iii) through a pattern (i.e., two or more acts), of (iv) racketeering activity. *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)).

"RICO defines 'racketeering activity' to include numerous so-called predicate acts, including 'any act which is indictable under [various provisions of title 18 of the United States Code].' " *In re ClassicStar*, 727 F.3d at 483. But, to the extent that the predicate acts consist of claims that sound in fraud, Rule 9(b)'s heightened pleading standard also comes into play regarding that activity. *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).

Dira and Kawamura correctly identify that the predicate act at issue in this litigation is the wire fraud committed when Plaintiffs and putative class members wired money to ROI, and related entities.[50] Plaintiffs and putative class members wired this money because they believed that ROI had a legitimate purpose and was an active, ongoing green energy operation.[51] Dira and Kawamura both engaged in representations that gave investors confidence that ROI was a legitimate company when in fact it was not.[52]

---

[50] DE#1 at ¶¶ 202-205.
[51] *Id.* at ¶¶ 85-100 at PageID 22-25.
[52] *Id.*

In short, participating in representations that a company had a robust green energy operation that would soon lead to large returns over a short period of time when no such operations existed or were ever going to exist resulting in millions of dollars of investments being lost and converted to personal use is a textbook definition of a Civil RICO claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Dira and Kawamura's motions to dismiss (DE# 49, 51, and 52) should all be denied in total and this case should proceed to a ruling on the merits.

Dated: August 6, 2024

Respectfully submitted,

By: */s/ Benjamin A. Gastel*
Benjamin A. Gastel (BPR #28699)
**Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC**
223 Rosa L. Parks Avenue, Suite 300
Nashville, TN 37203
Ph: (615) 800-6225
Fax: (615) 994-8625
ben@hsglawgroup.com

Alyson S. Beridon (BPR #40040)
**Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC**
600 Vine St., Ste 2720
Ph: (513) 381-2224
Fax: (615) 994-8625
alyson@hsglawgroup.com

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2024, I electronically filed the foregoing documents using the Court's CM/ECF system, and a copy of this filing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. The following counsel will receive service either by U.S. Mail, pre-paid postage, and/or the Court's CM/ECF system at the email addresses listed below:

David M Eldridge
Eldridge & Cravens, P.C.
400 West Church Avenue
Suite 101
Knoxville, TN 37902
Email: deldridge@ecattorneys.law

Loretta G Cravens
Eldridge & Cravens, P.C.
P.O. Box 398
Knoxville, TN 37901
Email: lcravens@ecattorneys.law

***Counsel for Brian Kawamura***

J. Michael Holloway
Litchford, Pearce & Associates
P.O. Box 8127
Chattanooga, TN 37414
Email: michael@lpafirm.com

***Counsel for The Well Fund LLC***

Dale G Mullen
Eric H Feiler
Joseph E.H. Atkinson
Michael H Brady
Whiteford, Taylor & Preston LLP
1021 East Cary Street
Suite 1700
Richmond, VA 23219
Email: dmullen@whitefordlaw.com

22

Email: efeiler@whitefordlaw.com
Email: jatkinson@whitefordlaw.com
Email: mbrady@whitefordlaw.com

Kimberly Michelle Ingram-Hogan
Bradley Arant Boult Cummings Litigation
One 22 One
1221 Broadway
Suite 2400
Nashville, TN 37203
Email: kingram@bradley.com

**Counsel for Matthew Dira and The Dira Group**

Cara J Alday
Gary R Patrick
Lance W Pope
Patrick, Beard, Schulman & Jacoway
537 Market Street
Suite 300
Chattanooga, TN 37402
423-756-7117
Fax: 423-257-5032
Email: calday@pbsjlaw.com
Email: gpatrick@pbsjlaw.com
Email: lpope@pbsjlaw.com

**Counsel for Steven Frost, Lisa Frost, and Joseph Investments, LLC**

Jonathan Frost
2457 Dogwood Grove Cir
Signal Mountain, TN 37377

ROI Fund I, LLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

ROI Fund II, LLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

ROI Fund III, LLC

c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

ROI Fund IV, LLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

Croft & Frost, PLLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

Chestnut Holdings, LLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

Rhino Onward International, LLC
c/o Sandeep Basran
2543 N. Milwaukee Ave., 2nd Fl
Chicago, IL 60647

Scorpio Ref, LLC
c/o Sandeep Basran
2543 N. Milwaukee Ave., 2nd Fl
Chicago, IL 60647

*/s/ Benjamin A. Gastel*
Benjamin A. Gastel