# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

|  |  |
|---|---|
| STACY STROBL and BRIAN HARDING, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 1:24-cv-140 |
| PAUL CROFT; JONATHAN FROST; RHINO ONWARD INTERNATIONAL, LLC; ROI FUND I, LLC; ROI FUND II, LLC; ROI FUND III, LLC; ROI FUND IV, LLC; BRIAN KAWAMURA; CROFT & FROST, PLLC; THE WELL FUND LLC; SCORPIO REF, LLC; MATTHEW DIRA; THE DIRA GROUP; CHESTNUT HOLDINGS, LLC; STEPHEN FROST; LISA FROST; JOSEPH INVESTMENTS, LLC; JANE and JOHN DOES 1-25, | District Judge: Curtis L Collier Magistrate Judge: Christopher H Steger |
| Defendants. | |

## OPPOSITION TO MOTION TO DISMISS FILED BY THE WELL FUND

Plaintiffs previously filed a consolidated Opposition to the three motions to dismiss (DE# 49, 51 and 52) filed by Defendants Matt Dira ("Dira"), the Dira Group, and Brian Kawamura ("Kawamura). On July 31, 2024, the Well Fund, LLC filed a Motion to Dismiss that makes similar arguments as those contained in the Dira and Kawamura motions to dismiss for failure to state a claim. Given the overlap of the issues Plaintiffs incorporate by reference the factual background contained in its Consolidated Opposition (DE# 61) and will focus this brief solely on the unique allegations related to The Well Fund ("Well Fund").

**I.     Frost Uses the Well Fund to Drive Investments for Rhino Onward International, LLC.**

The Well Fund is a Tennessee Limited Liability Company used by defaulting Defendant Jonathan Frost ("Frost") to drive investments into Rhino Onward International, LLC ("ROI"), a company that never had any legitimate business operations. DE# 1, Complaint ¶¶ 4-8, 25 at PageID 3-4, 7.

Frost solicited early investments into the Well Fund to pursue real estate investments through a fake promissory note scheme that promised payments of 20% annual interest. DE# 1, Complaint ¶¶67-68 at PageID 17.

Frost then diverted funds meant for the Well Fund to prop up his other business entities including his failing accounting firm and ROI. DE# 1, Complaint ¶¶ 71-73 at PageID 18.

The Well Fund played a key role in the early stages of the ROI Scheme. Specifically, Frost raised money into the Well Fund and diverted this money to set up and prop up Solarcode. DE# 1, Complaint ¶¶ 74-78 at PageID 19. Solarcode eventually shuttered and then Frost and Paul Croft ("Croft") launched ROI with ostensible plans to launch their own hydrogen plant for green energy product. *Id.*

Of course, the Well Fund was not the only mechanism which Frost and his business partners raised money for ROI's alleged operations, and instead Frost launched many other companies, including Scorpio Ref, LLC ("Scorpio") and the feeder funds associated with ROI, that he eventually diverted to serve his own

2

personal needs and other business interests. DE# 1, Complaint ¶¶ 81-84 at PageID 20.

## II.    The Well Fund has Liability as the Alter Ego of ROI.

At all relevant times when Frost engaged in his conspiracy to defraud investors of ROI, he was the operations manager of the Well Fund, owner, and principal board member of the Well Fund. DE# 1, Complaint ¶¶ 112 at PageID 27.

Frost along with Croft commingled funds amongst the corporate entities they controlled, including the Well Fund, to help perpetrate the ROI scheme and they did so to pursue their own individual interests at the expense of the individual investors of the Well Fund, ROI, and its related entities. DE# 1, Complaint ¶¶ 114-117 at PageID 27.

Frost and Croft instead took the investments made by the Plaintiffs and the putative class and diverted these funds to other operations including paying for payroll at their floundering and eventually failing accounting firm and pocketed money for their own personal use. DE# 1, Complaint at ¶¶ 9, 58-64 at PageID 4, 16-17.

Central to this scheme was also the now-defunct accounting firm, defendant Croft &Frost PLLC ("hereinafter "Croft & Frost") ostensibly run by Croft and Frost. Croft & Frost's clients became targets of the ROI investment scheme, and many victims began their relationship with Croft and Frost through their accounting firm. DE# 1, Complaint ¶ 7 at PageID 4.

## III.    Plaintiffs Pursue Claims Against the Well Fund for Its Role in The ROI Fraud.

As a result of the actions Frost as agent of the Well Fund, Plaintiffs and the putative class, Plaintiffs assert the following causes of action against the Well Fund:

**Count III**: Civil conspiracy alleging that the Well Fund along with all defendants engaged in a civil conspiracy by duping investors into believing that ROI had a legitimate business operation when it had none. *Id*. ¶¶ 146-159 at PageID 36-38.

**Count VII**: Civil RICO against the Well Fund and others alleging that the ROI investment scheme and the numerous corporate entities and individuals that perpetuated it violated federal racketeering law. *Id*. ¶¶ 198-213 at PageID 45-48.

Importantly, the Complaint does not allege a fraud claim against the Well Fund but seeks to hold it liable as a co-conspirator and alter ego of the corporate entities and individuals responsible for perpetrating the ROI scheme against investors.

## STANDARD OF REVIEW

### I.      Standard of Review for Rule 12(b)(6) Motions.

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) ("The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint."); *see also Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018) (A complaint therefore "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

4

that is plausible on its face.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "The complaint must thus 'contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir.2007). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" to prevent a motion to dismiss. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). Dismissal is appropriate when the plaintiff has not alleged facts that "state a claim to relief that is plausible on its face" and has failed to "raise a right to relief above the speculative level." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (quoting *Twombly*, 550 U.S. at 554, 555, 127 S. Ct. 1955).

Moreover, Rule 9(b) of the Federal Rules of Civil Procedure requires that, when pleading fraud, "a party must state with particularity the circumstances constituting fraud." While Rule 9(b) imposes a heightened standard, "Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. Rule 9(b), however, also reflects the rulemakers' additional

5

understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotations and citations omitted). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id*.

## **ARGUMENT**

I.    **The Complaint States a Claim for Fraud, Civil Conspiracy, and RICO Violations Against the Well Fund.**

A.    *The Complaint Satisfies the Heightened Pleadings Standards of Rule 9(b).*

The Well Fund moves to dismiss the Complaint on specious grounds that the Complaint fails the particularity requirements of Rule 9(b). As has been made repeatedly clear, this case is ultimately about a simple fraud: Croft, Frost, and others repeatedly claimed that ROI was a sophisticated green energy company ready and able to take advantage of changes to the tax code to unleash guaranteed returns for early investors. DE# 1, Complaint ¶¶ 2-11, 173-174 at PageID 2-5, 41. In reality, ROI had no legitimate business operations, was never going to launch any green energy endeavors, and lacked the technical, managerial, and operational capacity to actually run any green energy project. *Id*

Frost, acting as agent of the Well Fund, participated in these pitches to investors like Plaintiffs and the putative class promising ROI would lead to green

6

energy riches when he knew or should have known that these claims were utter nonsense. DE# 1, Complaint ¶¶ 85-93 at PageID 20-23.

The Complaint is replete with allegations of the "who, what, when" required by Rule(9)(b):

> **Who**: Croft, Frost, Dira, and Kawamura and others made repeated claims to investors that were false. DE# 1, Complaint ¶¶ 85-93 at PageID 20-23.

> **What**: All claimed that ROI would deliver green energy hydrogen production that would guarantee investors high rights of return in short period of time when in reality ROI never had any legitimate business operations. DE# 1, Complaint ¶¶ 85-93 at PageID 20-23.

> **When**: These claims were made on investor calls, on ROI's website, and on ROI's "account statements." DE# 1, Complaint ¶¶ 85-93 at PageID 20-23.

Importantly, as the Complaint details, Frost has already admitted in resolving his complaint before Tennessee regulatory agencies that he defrauded investors as part of the schemes related to the operations of his accounting firm. DE# 1-7. ROI, the accounting firm, and the numerous feeder funds where investors sent money have all ceased operations and are now defunct.

In other words, the Well Fund cannot reasonably contest the central allegation of this scheme: ROI was a fraud from the beginning and was meant to dupe investors out of their hard earned money.

Frost was a high level executive of the Well Fund and used it as a vehicle to cheat investors out of their earnings who used his role in the Well Fund to recruit investors into this false scheme and it should be held liable for its role in the scheme.

The Well Fund nevertheless attempts to use Rule 9(b)'s technicalities to save it from its intricate role in the fraud perpetrated by its co-conspirators claiming that

7

the Complaint fails to identify specific allegations as to the Well Fund that would satisfy Rule 9(b).

The Well Fund demands more than Rule 9(b) requires. "Rule 9(b) does not require omniscience; rather, the Rule requires that the ***circumstances*** of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988) (emphasis added); *see also*, *Monaco Indus., LLC v. Fomento Econ. Mexicano S.A.B. de C.V.*, 685 F. Supp. 3d 654, 673–74 (E.D. Tenn. 2023) (denying motion to dismiss under Rule 9(b) where Complaint detailed the identity of "Defendants" even if not the individual corporate employee, alleged fraudulent conduct including dates the conduct occurred and the substance of the conduct, and attached the communications at issue as exhibits because it sufficiently plead the who, what, when, where, and how required under 9(b)); *City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1337–39 (E.D. Tenn. 2016) (denying motion to dismiss based on Rule 9(b) where Complaint provided Defendants with "sufficient notice of the misrepresentation" so that they can answer "in an informed way" when it included the content of the misrepresentations and tethered them to the approximate time they occurred including month and year, the records supporting these allegations were within Defendants own control, explained why the statements were fraudulent, and included an amount of monetary damages.); *Bridgestone Am.'s, Inc. v. Int'l Bus. Machines Corp.*, 172 F. Supp. 3d 1007, 1018 (M.D. Tenn. 2016) (denying motion to dismiss based on Rule 9(b) in part where Plaintiff pleaded sufficient facts to survive its allegations

8

that Defendant engaged in unfair and deceptive acts and practices violating the Tennessee Consumer Protection Act and that Plaintiff suffered damages as a result).

Here, there can be little doubt that the Plaintiffs have adequately pled the **_circumstances_** of the fraud scheme and moreover have pled how the Well Fund, and specifically Frost acting as its agent, played a role in perpetrating the fraud.

### B. The Complaint States a Claim for Civil Conspiracy and Civil RICO Against the Well Fund.

Again, it is important to remember that the claims of fraud contained in the Complaint are not asserted against the Well Fund, rather the Well Fund is included as a defendant because it is a co-conspirator with Frost and others in perpetuating the ROI scheme.

The elements of a civil conspiracy are: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury. *B&L Mgmt. Grp., LLC v. Adair*, No. 17-2197, 2019 WL 3459244, at *10 (W.D. Tenn. July 31, 2019).

To proceed beyond a motion to dismiss on a Civil RICO claim, a plaintiff must plausibly allege, that the defendant: (i) conducted, (ii) an enterprise, (iii) through a pattern (i.e., two or more acts), of (iv) racketeering activity. *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)).

"RICO defines 'racketeering activity' to include numerous so-called predicate acts, including 'any act which is indictable under [various provisions of title 18 of the

9

United States Code]." *In re ClassicStar*, 727 F.3d at 483. But, to the extent that the predicate acts consist of claims that sound in fraud, Rule 9(b)'s heightened pleading standard also comes into play regarding that activity. *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).

There is no doubt that Frost himself committed the underlying fraud at the center of the ROI fraud conspiracy. DE# 1-7. There is no requirement under civil conspiracy law or Civil RICO that all members of a conspiracy also commit acts of fraud but rather conspiracy requires an agreement to accomplish an unlawful purpose. *See B&L,* 2019 WL 3459244, at *10-11.

The Well Fund does not claim that the complaint fails to plead such an agreement or that the ROI fraud conspiracy was in fact action in pursuit of an unlawful purpose by unlawful means, nor could they. The whole company was designed to lie to investors and defraud them of their money. Sadly, it worked.

And the Complaint details how the Well Fund played an early key role in getting investors into the ROI scheme by propping up Solarcode and ROI. DE# 1, Complaint ¶¶ 65-78 PageID 18-19.

As a result, Plaintiffs have sufficiently plead a claim for civil conspiracy and against the Well Fund because they have adequately plead they engaged in a common scheme to accomplish an unlawful purpose that was operational and resulted in injury. *B&L Mgmt. Grp., LLC v. Adair*, 2019 WL 3459244, at *10-11.

Moreover, Plaintiffs have sufficiently plead a claim for Civil RICO notwithstanding the fact that Plaintiffs do not allege that the Well Fund itself

committed acts of fraud or itself participated in the wire fraud underlying Plaintiffs' Civil RICO claims.

"While the Sixth Circuit requires Plaintiffs to identify with specificity the actions that each defendant has taken in furtherance of the alleged fraud, [ ] the law makes no requirement that each defendant involved must have personally made a misrepresentation to a plaintiff or used the mails or wires." *In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 633 (E.D. Ky. 2011), *opinion supplemented on reconsideration* (Nov. 8, 2011), *amended in part*, No. CIV.A. 06-243-JMH, 2012 WL 1080569 (E.D. Ky. Mar. 30, 2012), and *aff'd*, 727 F.3d 473 (6th Cir. 2013), and *aff'd*, 727 F.3d 473 (6th Cir. 2013) (internal citations omitted).

"To satisfy the particularity requirement, a plaintiff need only allege that each RICO defendant participated in a scheme to defraud knowing or having reason to anticipate the use of the mail or wires would occur and that each such use would further the fraudulent scheme." *Id*. Plaintiffs do that here. DE# 1, Complaint ¶¶ 204-208 at PageID 46-47.

Frost, acting as agent of the Well Fund and using his position at the Well Fund, undertook the ROI Scheme with the specific intent to use wire fraud to dupe investors like the Plaintiffs into investing in a fake green energy company. It matters not that the Well Fund itself did not make these misrepresentations, it was an active participant in the overall conspiracy and is subject to Civil RICO liability. *Id*. (granting summary judgment to plaintiffs because "Plaintiffs identified the fraudulent misrepresentations...[and]... identified the use of the wires and mails as

11

part of the scheme. It is undisputed that misrepresentations were made to the Plaintiffs in order to induce their participation in the Mare Lease Programs and that the mails and the wires were used as part and parcel in the scheme to induce their participation. Further, the facts demonstrate that Defendants caused or had reason to know of the use of the mails and wires as an integral part of their scheme to defraud Plaintiffs. It is irrelevant that a particular utterance of the misrepresentation was not spoken by every one of their lips or that it did not flow from every one of their pens.").

### C. The Complaint Adequately Pleads Alter Ego Liability.

Regarding a corporation as a legal entity with the capacity to contract, sue, and be sued is a legal fiction designed to provide incentives for business investments. *Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982). However, the corporate fiction should be "disregarded in the interest of public convenience, fairness and equity." *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 733–34 (6th Cir. 2003) (internal citations and quotations omitted).

"When the incentive value of limited liability is outweighed by the competing value of basic fairness to parties dealing with the corporation—courts may look past a corporation's formal existence to hold shareholders or other controlling individuals liable for 'corporate' obligations." *Id*.

Corporate forms should be disregarded "when a corporation is merely the alter ego of its owners, such that the corporation no longer has a separate personality apart from its owners." *Id*. (internal quotations omitted). "[W]hen a corporation exists solely

12

for the purpose of serving as an alter ego for its owners, the courts will not permit themselves to be blinded or deceived by mere forms or law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require." *Id*. (internal quotations omitted).

Here, the Well Fund utterly ignores Plaintiffs' well pleaded allegations concerning the Well Fund's alter ego liability for the actions of ROI, the feeder funds, and Scorpio. Each of these entities, as plead, served the personal interests of Frost and were part of a larger scheme to defraud investors through these fake corporate forms. The Complaint details the commingling of funds and the diverting of funds from the Well Fund to serve Frost's personal interests. *See e.g.,* DE# 1, Complaint ¶¶ 110-119 at PageID 28-29. These allegations are sufficient at the pleading stage to hold the Well Fund as the alter ego of ROI, the ROI feeder funds, and the other corporate entities involved in the ROI Scheme. *AT&T Global Information Solutions Co. v. Union Trade Car Co.*, 29 F.Supp.2d 857, 866-67 (S.D. Ohio 1998) (finding alter ego relationship between parent and subsidiary under Ohio alter ego doctrine where parent owned all capital stock in subsidiary, subsidiary had inadequate capital, parent and subsidiary commingled funds, and employees and corporate officers overlapped).

## CONCLUSION

For the foregoing reasons, the Well Fund's motions to dismiss (DE# 59) should all be denied in total and this case should proceed to a ruling on the merits.

13

Dated: August 21, 2024

Respectfully submitted,

By: */s/ Benjamin A. Gastel*
Benjamin A. Gastel (BPR #28699)
**Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC**
223 Rosa L. Parks Avenue, Suite 300
Nashville, TN 37203
Ph: (615) 800-6225
Fax: (615) 994-8625
ben@hsglawgroup.com

Alyson S. Beridon (BPR #40040)
**Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC**
600 Vine St., Ste 2720
Ph: (513) 381-2224
Fax: (615) 994-8625
alyson@hsglawgroup.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2024, I electronically filed the foregoing documents using the Court's CM/ECF system, and a copy of this filing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. The following counsel will receive service either by U.S. Mail, pre-paid postage, and/or the Court's CM/ECF system at the email addresses listed below:

David M Eldridge
Eldridge & Cravens, P.C.
400 West Church Avenue
Suite 101
Knoxville, TN 37902
Email: deldridge@ecattorneys.law

Loretta G Cravens
Eldridge & Cravens, P.C.
P.O. Box 398
Knoxville, TN 37901
Email: lcravens@ecattorneys.law

***Counsel for Brian Kawamura***

J. Michael Holloway
Litchford, Pearce & Associates
P.O. Box 8127
Chattanooga, TN 37414
Email: michael@lpafirm.com

***Counsel for The Well Fund LLC***

Dale G Mullen
Eric H Feiler
Joseph E.H. Atkinson
Michael H Brady
Whiteford, Taylor & Preston LLP
1021 East Cary Street
Suite 1700
Richmond, VA 23219
Email: dmullen@whitefordlaw.com

15

Email: efeiler@whitefordlaw.com
Email: jatkinson@whitefordlaw.com
Email: mbrady@whitefordlaw.com

Kimberly Michelle Ingram-Hogan
Bradley Arant Boult Cummings Litigation
One 22 One
1221 Broadway
Suite 2400
Nashville, TN 37203
Email: kingram@bradley.com

***Counsel for Matthew Dira and The Dira Group***

Cara J Alday
Gary R Patrick
Lance W Pope
Patrick, Beard, Schulman & Jacoway
537 Market Street
Suite 300
Chattanooga, TN 37402
423-756-7117
Fax: 423-257-5032
Email: calday@pbsjlaw.com
Email: gpatrick@pbsjlaw.com
Email: lpope@pbsjlaw.com

***Counsel for Steven Frost, Lisa Frost, and Joseph Investments, LLC***

Jonathan Frost
2457 Dogwood Grove Cir
Signal Mountain, TN 37377

ROI Fund I, LLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

ROI Fund II, LLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

ROI Fund III, LLC

16

c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

ROI Fund IV, LLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

Croft & Frost, PLLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

Chestnut Holdings, LLC
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

Rhino Onward International, LLC
c/o Sandeep Basran
2543 N. Milwaukee Ave., 2nd Fl
Chicago, IL 60647

Scorpio Ref, LLC
c/o Sandeep Basran
2543 N. Milwaukee Ave., 2nd Fl
Chicago, IL 60647

*/s/ Benjamin A. Gastel*
Benjamin A. Gastel