UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

STACY STROBL, *et al.*,           )
                                   )
          *Plaintiffs*,            )
                                   )  Case No. 1:24-cv-140
v.                                 )
                                   )  Judge Curtis L. Collier
PAUL CROFT, *et al.*,              )  Magistrate Judge Christopher H. Steger
                                   )
          *Defendants*.            )

# **MEMORANDUM**

Before the Court is a motion by Defendant, The Well Fund, LLC ("the Well Fund" or "Defendant") to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 59.) Plaintiffs responded in opposition and incorporated a previous filing (Doc. 61) by reference. (Doc. 75.) For the reasons set out below, the Court will **DENY** Defendant's motion to dismiss (Doc. 59).

## **I.    BACKGROUND**[1]

Plaintiffs filed a complaint on behalf of themselves and all others similarly situated. (Doc. 1.) Defendants operated a fraudulent enterprise to induce Plaintiffs to invest in shell companies, including Defendant, the Well Fund, LLC, ostensibly to invest the funds in real estate and green energy. (*Id.* ¶¶ 1, 2–6, 67, 73, 75–77.) But rather than investing as promised, the funds were diverted to enrich certain co-defendants and prop up other businesses. (*Id.* ¶¶ 73, 84.)

---

[1] The following summary of the facts makes all inferences in favor of Plaintiffs as the non-moving party." *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

The named Plaintiffs are individuals who lost money by investing in the defendants' fraudulent scheme. (*Id*. ¶¶ 10–11; 101–03.) Both Plaintiffs invested in defendants' shell companies but not specifically in the Well Fund. (*Id*. ¶¶ 14–15.) Defendant, the Well Fund, was created in June 2020 by co-defendant Jonathan Frost ("Mr. Frost") and two of his business partners, Doug McCoy and Tim Stone. (*Id*. ¶ 65.) During the relevant time co-defendants Mr. Frost and Paul Croft ("Mr. Croft") were the Well Fund's agents. (*Id*. ¶ 152.) "[Mr.] Frost was the operations manager of the Well Fund and an owner and principal board member or managing member." (*Id*. ¶ 112.)

In 2020, the Well Fund acquired a forty-eight-unit apartment building in Chattanooga, Tennessee. (*Id*. ¶ 66.) "[I]n 2021, [Mr.] Frost began soliciting investors into the Well Fund to ostensibly pursue additional real estate investments." (*Id*. ¶ 67.) Other individuals working with Mr. Frost, including Matt Dira ("Mr. Dira"), helped recruit investors into the Well Fund. (*Id*. ¶ 72.) "[T]he principal investment vehicle into the Well Fund LLC from these 'investors' was the issuance of promissory notes" that would be paid back in monthly installments. (*Id*. ¶ 68.) Mr. Frost and others working with him promised investors that investment in the Well Fund promissory notes was safe and would "generate high rates of guaranteed annual returns." (*Id*. ¶ 69–70.) Investors were specifically promised the promissory notes would pay a twenty-percent interest rate. (*Id*. ¶ 68.)

The promissory note scheme raised millions of dollars and the Well Fund paid on the promissory notes until early 2023. (*Id*. ¶¶ 70, 73.) But the money was not used to purchase real estate or other investments. (*Id*. ¶ 73.) Instead, Mr. Frost diverted funds intended for the Well Fund to his other business entities without alerting the promissory note holders of his intentions to

2

use the funds for other means. (*Id.* ¶ 71.)

Plaintiffs allege "[o]n information and belief," that Mr. Frost used approximately four million dollars of the investments raised for the Well Fund to launch a new company in 2021 called Solarcode, which purported to be a green energy company. (*Id.* ¶¶ 74–76.) However, Solarcode had no business operations and closed in 2022, within approximately one year of its launch. (*Id.* ¶ 74, 77.)

Another fraudulent investment scheme involved Rhino Onward International, LLC ("ROI"). (*Id.* ¶ 55.) In January 2022, Mr. Croft and Mr. Frost founded ROI, which, like Solarcode, purported to be a green energy company. (*Id.* ¶¶ 2, 3.) They also created shell companies ROI Fund I, ROI Fund II, ROI Fund III, ROI Fund IV, and Scorpio, and promised to use funds invested in these companies to invest in ROI. (*Id.* ¶¶ 4, 9, 97.) As relevant here, Mr. Frost falsely represented that funds invested in the Well Fund would fund ROI operations. (*Id.* ¶ 83, 98.) Plaintiffs relied on these statements and sent money to the Well Fund "with the expectation that they were investing in ROI's green energy operations." (*Id.* ¶ 133.)

Mr. Croft and Mr. Frost "routinely promised that [ROI] had the engineering, land development, and scientific expertise to launch an operational green energy hydrogen producing plant." (*Id.* ¶ 5.) However, this was false, and Mr. Frost, Mr. Croft, and others knew or should have known that. (*Id.*) Mr. Dira "used his business contacts to put investors in touch with [Mr.] Frost and [Mr.] Croft to continue their schemes." (*Id.* ¶¶ 27, 67.) On Plaintiffs' "information and belief," Mr. Dira received a commission for each investor he helped persuade to invest in the Well Fund even though he "knew or should have known [Mr.] Frost's true intentions with the Well Fund promissory note scheme." (*Id.* ¶ 67, 72.) Until September 2023, Mr. Frost and Mr. Dira held

3

monthly investor calls in which Mr. Frost made "outlandish claims about ROI's pending success."

(*Id*. ¶ 96.) Specifically, Mr. Frost and Mr. Dira falsely claimed that:

- a. recent changes to the tax code would allow a company like ROI to obtain lucrative tax credits for launching green energy and hydrogen focused energy products;

- b. an Israeli company would soon be coming on board to provide a huge infusion of cash that would allow early investors in ROI to achieve 20% annual returns on investment;

- c. ROI had negotiated with a Native American tribe in Arizona the lease on land for ROI to construct a large hydrogen/green energy plant; and

- d. ROI would have a hydrogen/green energy plant online by 2025.

(*Id*. ¶¶ 89, 91.) Plaintiffs "relied upon these statements in sending money to the ROI defendants, the Well Fund, and Scorpio with the expectation that they were investing in ROI's green energy operations." (*Id*. ¶ 133.) Even though both Mr. Frost and Mr. Dira "knew or should have known" these statements were false, they repeated the claims to secure additional investments into ROI. (*Id*. ¶¶ 90–91.) During the investor calls, Mr. Frost also attempted to assuage concerns that the Well Fund promissory notes were not being paid according to their terms. (*Id*. ¶ 97.)

In furtherance of the scheme, Mr. Frost sent ROI account statements to Plaintiff Strobl and other investors "showing the maturity date and interest rates applicable to [ROI] investments," in order "to dupe [them] into believing that investments in these feeder funds were really investments in ROI." (*Id*. ¶ 102, Doc. 1-4.) But rather than investing in green energy operations, Mr. Frost and Mr. Croft collected over forty million dollars from investors through the shell companies, including the Well Fund, and diverted the funds to other operations to enrich themselves and other business partners. (*Id*. ¶¶ 9–10, 58–60, 71, 73, 84.)

4

In carrying out the scheme, Mr. Frost and Mr. Croft required Plaintiffs to send money by wire transfer to bank accounts they controlled. (*Id.* ¶ 204.) Specifically, Mr. Frost and Mr. Croft induced investors to send money by wire transfer, accepted the wire transfers, comingled funds sent to the shell companies, and then wired the money to other accounts to divert it for their own enrichment. (*Id.* ¶¶ 207–08.)

Plaintiffs assert claims of civil conspiracy and violation of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961, *et. seq.*, ("RICO") against the Well Fund. (Doc. 1 ¶¶ 146–59, 198–213.) The Well Fund moved to dismiss the complaint against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 59.)

## II. STANDARD OF REVIEW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera*, 551 F.3d at 466 (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005)). "[A]llegations asserted upon information and belief are not *per se* insufficient to withstand a Rule12(b)(6) motion; the Court must consider the pleading's factual allegations as a whole. *Glob. Licensing, Inc. v. Namefind Ltd. Liab. Co.*, 582 F. Supp. 3d 467, 479 (E.D. Mich. 2022) (*citing Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (stating "complaints grounding claims on 'information and belief' can survive a motion to dismiss" if they "set forth a factual basis for such belief"); *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 837 n.10 (N.D. Ohio 2021) ("Factual allegations based upon information and belief may be sufficient to support a plausible claim for purposes of

5

Rule 12(b)(6) analysis where the factual allegations in the entire pleading allow the Court to draw the reasonable inference that defendant is liable for the conduct alleged.")) (citation omitted) (emphasis in original). "[N]aked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint." *Flagstar Bank*, 727 F.3d at 506 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and alteration omitted)).

In deciding a motion under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Iqbal*, 556 U.S. at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. If a party presents matters outside the pleadings in connection with a motion to dismiss, the court must either exclude those matters from consideration or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

### III. DISCUSSION

Defendant moves to dismiss the complaint against it on the grounds that the complaint fails to plead fraud with sufficient specificity or to show that two or more defendants were acting together with a common plan. (Doc. 59 at 2, 7.) It also argues that "Plaintiffs admit in the [c]omplaint that the Well Fund was a victim of [Mr.] Frost." (*Id.* at 5.) Plaintiffs contend that the

6

complaint pleads the circumstances of the fraud sufficiently to put Defendant on notice as to the nature of the claims. (Doc. 75 at 8.) They argue "[t]here is no doubt that [Mr.] Frost himself committed the underlying fraud at the center of the ROI fraud conspiracy," and "[t]here is no requirement . . . that all members of a conspiracy also commit acts of fraud" to prove conspiracy. (*Id*. at 10.) Finally, they assert that the complaint sufficiently pleads that "the Well Fund [is] the alter ego of ROI, the ROI feeder funds, and the other corporate entities involved in the ROI scheme." (*Id*. at 13.)

As an initial matter, the Court first considers Plaintiffs' argument that the Well Fund is the alter ego of other entities. (*See id*.) "[A] corporation is a distinct legal entity that exists separately from its shareholders, officers, and directors." *Youree v. Recovery House of E. Tennessee, LLC*, No. M2021-01504-SC-R11-CV, 2025 WL 259057, at *8 (Tenn. Jan. 22, 2025) (citations omitted).

> Nevertheless, it is well-recognized that the limited liability associated with the corporate form is not absolute. Courts express this limitation through the doctrine of "piercing the corporate veil." At the most general level, the corporate veil is pierced when a court determines that a corporate debt is not merely a debt of the corporation but, in fairness, should be considered the debt of another individual or entity. Piercing the corporate veil is an equitable doctrine, commonly said to be used to prevent injustice. The doctrine can be understood as an attempt to balance the benefits of limited liability against its costs.

*Id*. (internal citations omitted).

Whether the Well Fund or any other entity is subject to alter ego liability is a question of liability for debt and is irrelevant to whether the complaint states a claim against the Well Fund. As such, the Court moves to whether Plaintiffs state a claim for civil conspiracy and RICO against the Well Fund.

A. **Civil Conspiracy**

7

Under Tennessee law, the elements of a civil conspiracy are: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citation omitted). As to the first element, "[e]ach conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *First Cmty. Bank, N.A. v. First Tenn. Bank*, 489 S.W.3d 369, 396 (Tenn. 2015) (quoting *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001)). "The agreement by conspirators 'need not be formal, the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy.'" *Id.* (quoting *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 208 S.W.2d 344, 354 (Tenn. 1948)). Because civil conspiracies are most often proven by circumstantial evidence "fact-finders may consider the nature of the acts themselves, the relationship of the parties, the interests of the conspirators, and other circumstances." *Id.* (quoting *Stanfill v. Hardney*, No. M2004-02768-COA-R3-CV, 2007 WL 2827498, at *8 (Tenn. Ct. App. Sept. 27, 2007)). But the fact-finder must have "more than a suspicion or conjecture that a conspiracy exists" and the evidence must allow for inference that co-conspirators jointly agreed to accomplish the common purpose. *Id.*

"It is well settled in Tennessee that the tort of civil conspiracy requires underlying wrongful conduct, and that conspiracy, standing alone, is not sufficient to support a cause of action[.]" *Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010) (quoting *Greene v. Brown & Williamson Tobacco Corp.,* 72 F. Supp. 2d 882, 887 (W.D. Tenn.1999)). "If the underlying wrongful conduct is found to be not actionable then the conspiracy claim must also fail." *Id.*

8

(quoting *Greene*, 72 F. Supp. 2d at 887).  When a civil conspiracy claim is based on fraud, the claim is subject to the heightened pleading standard in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." *See Farmer v. Upchurch*, No. 1:21-CV-153-TAV-SKL, 2021 WL 5622104, at *9–10 (E.D. Tenn. Nov. 30, 2021).  Plaintiffs must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir. 1993).  But "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

First, Plaintiffs identify the overall fraudulent scheme to induce investment in shell companies with the false promise that the funds would be invested in green energy companies which in reality had no operations.  They allege that Mr. Frost did overt acts in furtherance of the conspiracy that resulted in injury, satisfying the third and fourth elements of a civil conspiracy. *See Kincaid*, 221 S.W.3d at 38.  Specifically, on monthly calls that were held until September 2023, Mr. Frost made specific false claims about ROI operations which are detailed in the complaint. (Doc. 1 ¶¶ 89, 91.)  Mr. Frost issued ROI account statements in order to dupe Plaintiffs into believing they had invested in ROI.  (*Id.* ¶ 102, Doc. 1-4.)  He also made false statements to induce Plaintiffs' investment in the Well Fund with the expectation that they were investing in ROI's green energy operations. *(*Doc. 1 ¶ 133.)  Plaintiffs "relied upon these statements in sending money to the ROI defendants, the Well Fund . . . with the expectation that they were investing in ROI's green energy operations." (*Id.*)  All of these overt acts were done to further the fraudulent

9

scheme and resulted in harm to the Plaintiffs. Plaintiffs identify the fraudulent scheme with sufficient specificity to satisfy Rule 9(b).

Second, the Court turns to the remaining question of whether the Well Fund joined the "common design" to accomplish an unlawful purpose to satisfy the first two elements of civil conspiracy. *See Kincaid*, 221 S.W.3d at 38. Plaintiffs assert the Well Fund sold promissory notes which raised millions of dollars that were ultimately diverted for Mr. Frost's personal use. (*Id*. ¶¶ 70–71, 73.) Mr. Frost used millions of dollars of the Well Fund investments to launch Solarcode, which was a sham company with no business operations. (*Id*. ¶¶ 74–77.) Mr. Frost, Mr. Croft, and others also induced investments in the Well Fund by promising to invest in ROI, which also had no operations. (*Id*. ¶¶ 9–10, 58–60, 71, 73, 84.) The Well Fund was created by Mr. Frost and two of his business partners. (*Id*. ¶ 65.) During the relevant time, co-defendants Mr. Frost and Mr. Croft were the Well Fund's agents. (*Id*. ¶ 152.) Mr. Frost was the operations manager and an owner and principal board member or managing member. (*Id*. ¶ 112.) The intertwined relationship between the Well Fund and Mr. Frost and the nature of the act of selling promissory notes with false promises are circumstantial evidence that the Well Fund was part of the common design of the unlawful fraudulent scheme. *See Dale*, 186 Tenn. 69, 208 S.W.2d at 354.

Plaintiffs state a civil conspiracy claim against the Well Fund that is plausible on its face. *Twombly*, 550 U.S. at 570. Accordingly, the Court will **DENY** Defendant's motion to dismiss for failure to state a claim as to Plaintiffs' civil conspiracy claim.

### B. RICO

"RICO criminalizes conducting business through a pattern of racketeering activities and provides a civil cause of action for individuals injured by racketeering activity." *Justice v.*

*Petersen*, No. 3:21-CV-28, 2021 WL 3475554, at *4 (E.D. Tenn. Aug. 6, 2021), *aff'd*, No. 21-5848, 2022 WL 2188451 (6th Cir. June 17, 2022) (citing 18 U.S.C. §§ 1962, 1964). "While RICO 'is a criminal statute, an injured party can bring a civil RICO claim against parties who violate any subsection of § 1962.'" *Id.* (quoting *Courser v. Mich. H.R.*, 831 F. App'x 161, 185 (6th Cir. 2020)). To state a claim of a pattern of racketeering activity under § 1962(c), a plaintiff must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). A plaintiff must also allege the RICO violation was the proximate cause of the plaintiff's injury. *In re Reciprocal of Am. (ROA) Sales Pracs. Litig.*, No. CIV. A. 04-2078, 2007 WL 2900286, at *7 (W.D. Tenn. Sept. 28, 2007) (collecting cases). However, it does not require the plaintiff "plead or prove first-party reliance on an allegedly false statement." *Heinrich*, 668 F.3d at 405 (citation omitted).

1. **Conduct of an Enterprise**

"To establish liability under [18 U.S.C.] § 1962(c), a plaintiff 'must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name.'" *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013) (citation omitted). A RICO "'person' includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A RICO "enterprise" may include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). "Under the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under section 1962(c)

11

Case 1:24-cv-00140-CLC-CHS   Document 90   Filed 02/19/25   Page 11 of 15
PageID #: 628

for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members." *In re ClassicStar*, 727 F.3d at 490 (citation omitted).

Plaintiffs named seventeen co-defendants who are each capable of holding a legal or beneficial interest in property and qualify as "persons" for the purposes of § 1962(c). Plaintiffs allege that the co-defendants collectively conducted the affairs of a RICO "enterprise." (*See* Doc. 1 ¶¶ 146–97.) This "enterprise" satisfies the distinctness requirement as the co-defendants are not solely members or agents of the same entity. Defendant, the Well Fund, was created by Mr. Frost and two individuals who are not named as co-defendants. (*Id*. ¶ 65.) During the relevant time Mr. Frost and Mr. Croft were the Well Fund's agents. (*Id*. ¶ 152.) But additional co-defendants including Mr. Dira, Mr. Kawamura, Mr. Steven Frost, and Ms. Lisa Frost were not members or otherwise involved in the Well Fund's operations. Accordingly, regardless of whether Mr. Frost or Mr. Croft were agents of the Well Fund, the complaint sufficiently pleads the existence of both a "person" and an "enterprise" as required by the RICO statute. *See* 18 U.S.C. § 1962(c); *In re ClassicStar*, 727 F.3d at 490.

As to the requisite conduct, "[l]iability under 18 U.S.C. § 1962(c) requires that Defendants 'participate' in the enterprise's conduct." *Allstate Ins. Co. v. Lint Chiropractic PC*, 735 F. Supp. 3d 833, 842 (E.D. Mich. 2024). The Supreme Court has adopted the "operation or management test." *Petersen*, 2021 WL 3475554, at *4 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179–83 (1993)). Under this test, "one is not liable . . . unless one has participated in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 183. "Sufficient conduct requires more than aiding and abetting, . . . and, instead, involves 'some part in directing [the enterprise's] affairs.'" *Petersen*, 2021 WL 3475554, at *4 (quoting *Reves*, 507 U.S. at 179) (internal citation

12

omitted). Directing enterprise affairs "can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008) (citations omitted).

Plaintiffs identify the fraudulent purpose of the RICO enterprise and the Well Fund's role in executing the scheme. The Well Fund solicited investors by making fraudulent representations about how their money would be invested, spent millions to launch Solarcode, which had no operations, and mislead investors about payment on their promissory notes, all in furtherance of the fraudulent enterprise. (Doc. 1 ¶¶ 67–73, 75–77, 97.) At minimum, these allegations show the Well Fund knowingly carried out enterprise decisions. *See Fowler*, 535 F.3d at 418.

Plaintiffs sufficiently allege the existence of the enterprise and the Well Fund's participation in the conduct of the enterprise.

### 2. Pattern of Racketeering Activity

A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years. 18 U.S.C. § 1961(5). "Mail fraud and wire fraud are among the enumerated predicate offenses that can constitute 'racketeering activity.'" *In re ClassicStar*, 727 F.3d at 484 (citing 18 U.S.C. § 1961(1)). The elements of wire fraud are: (1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Heinrich.*, 668 F.3d at 404 (quoting *United States v. Jamieson,* 427 F.3d 394, 402 (6th Cir. 2005)).

A plaintiff must also demonstrate that "the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Id*. (citation omitted).

> When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."

*Id*. at 404–05 (quoting *Frank v. Dana Corp.,* 547 F.3d 564, 570 (6th Cir.2008)).

Plaintiffs identify the defendants' overall fraudulent scheme to induce investments with false promises. The complaint alleges various uses of interstate wire communications for financial transactions. (Doc. 1 ¶¶ 204, 207–08.) It also identifies specific false statements Mr. Frost repeatedly made about ROI's operations on monthly calls to induce Plaintiffs to invest in the Well Fund and other shell companies, satisfying the requirement to show a pattern of racketeering. (*Id*. ¶¶ 89, 91.) These acts were done with both the purpose and effect of defrauding Plaintiffs who relied on misrepresentations about the defendants' investment opportunities and lost money as a result. (*Id*. ¶¶ 10–11, 101–03, 133.) As previously discussed, Plaintiffs sufficiently plead reliance on fraudulent statements to satisfy Rule 9(b) at this stage.

Plaintiffs state a RICO claim against the Well Fund that that is plausible on its face. Accordingly, the Court will **DENY** Defendant's motion to dismiss for failure to state a claim as to Plaintiffs' RICO claim.

IV. **CONCLUSION**

The Court will **DENY** the motion to dismiss the complaint by Defendant, the Well Fund, LLC (Doc. 59).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**

15