UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| STACY STROBL, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) Case No. 1:24-cv-140 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| PAUL CROFT, *et al.*, | ) Magistrate Judge Christopher H. Steger |
| | ) |
| *Defendants*. | ) |

**MEMORANDUM**

Before the Court is Defendant Brian Kawamura's motion to certify for interlocutory appeal the Court's February 20, 2025, Order denying his motion to dismiss for lack of personal jurisdiction (Doc. 94) and to stay the case as to himself pending appeal. (Doc. 97.) Plaintiffs Stacy Strobl and Brian Harding responded in opposition to Defendant's motion. (Doc. 100.) This matter is now ripe for review.

**I.    BACKGROUND**

Plaintiffs claim that Defendants collectively operated a fraudulent enterprise to induce Plaintiffs to invest in Rhino Onward International, LLC ("ROI") through shell companies but instead diverted the funds to enrich themselves. (Doc. 1 ¶¶ 1, 4, 9–10, 84, 97, 203–04.) Plaintiffs claim they lost money by investing in the Defendants' fraudulent scheme. (*Id*. ¶¶ 10–11, 101–03.)

Because Defendant Kawamura moves the Court to certify appeal on the issue of personal jurisdiction, the Court will lay out the facts relevant to this inquiry. Defendant Kawamura was salaried as the Chief Executive Officer ("CEO") of ROI. (*Id*. ¶ 92.) Defendant Kawamura joined at least one[1] investment call in which "Frost and/or Dira made representations about ROI's

---

[1] The complaint also states that Defendant Kawamura attended at least two investment

business operations and its alleged green energy plants." (*Id*. ¶¶ 92, 100.) Defendant Kawamura "knew or should have known that Frost's claims during this investment call were materially false and misleading and omitted material information about the safety and security" of investing in ROI. (*Id*. ¶ 92.) But Defendant Kawamura did not correct the information, and "never joined another call." (*Id*..) Despite his role as CEO, Defendant Kawamura "stuck his head in the sand and let Frost proceed to use ROI in his scheme to dupe investors into investing in ROI." (*Id*.)

As CEO, it was Defendant Kawamura's duty to ensure that the funds that Mr. Frost, Defendant Dira, and others raised "were placed in ROI's operating account to be used solely for ROI's business operations." (*Id*. ¶ 100.) Instead he "allowed Frost to divert these funds to his own personal use and to fund CF and Frost's other business ventures." (*Id*.) Plaintiffs assert "[u]pon information and belief, Defendant Kawamura traveled to Tennessee as part of his work with [ROI] and his business dealings with Jonathan Frost." (*Id*. ¶ 23.) Additionally, ROI "had routine and regular contact with Tennessee and specifically Jonathan Frost during its operations and Defendant Kawamura's role in this case directly relates to his numerous interactions with [ Jonathan Frost."[2] (*Id*.)

On July 16, 2024, Defendant Kawamura moved to dismiss the complaint for failure to state a claim and for lack of personal jurisdiction. (Doc. 52.) On February 20, 2025, this Court granted and denied in part the motion to dismiss. (Doc. 94.) The Court determined that Plaintiffs had

---

calls. (*Id*. ¶ 100.) The precise number of calls he attended is inconsequential to the Court's analysis.

[2] Plaintiffs also allege that Defendant Kawamura was also "involved in the Solarcode venture previously launched by Frost" (Doc 1. ¶ 92) but do not specify how he was involved. Solarcode investments was another ostensibly green energy company launched by Mr. Croft and Mr. Frost that had no business operations. (*Id*. ¶¶ 74, 77.) Approximately four million dollars was paid from the Well Fund to Solarcode. (*Id*. ¶ 76.)

failed to make a prima facie showing to establish personal jurisdiction over Defendant Kawamura based on his own contacts with the forum. (Doc. 92 at 18.) The Court did, however, find that Defendant Kawamura was subject to its jurisdiction after applying the conspiracy theory of personal jurisdiction. (*Id.* at 24.) The Court explained that under the conspiracy theory of personal jurisdiction,

> "an out-of-state defendant involved in a conspiracy who lacks sufficient 'minimum contacts' with the forum state may nevertheless be subject to jurisdiction because of a co-conspirator's contacts with the forum." *Chenault v. Walker*, 36 S.W.3d 45, 51 (Tenn. 2001). Under this doctrine, one co-conspirator's overt act in furtherance of the conspiracy is attributable to other co-conspirators if the act is "of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state." *Id*. at 53 (quotation and citation omitted).
> "Although the Sixth Circuit has neither adopted nor rejected a 'conspiracy' theory of personal jurisdiction, district courts within the Sixth Circuit have split on the question." *DayCab Co., Inc. v. Prairie Tech., LLC*, No. 3:20-CV-63, 2021 WL 6275629, at *5 (E.D. Tenn. Aug. 13, 2021) (citations omitted).

(*Id*. at 19.)

Given Defendant Kawamura's role as CEO of the company at the center of the fraudulent scheme and his alleged duty to monitor the company's finances, the Court explained that the "nature of the fraud and the relationship between the parties is circumstantial evidence of an agreement to accomplish a common purpose that survives a motion to dismiss." (*Id.* at 23–24.) Therefore, the Court found that Plaintiffs stated a claim that Defendant Kawamura joined a civil conspiracy and that the Court had personal jurisdiction. (*Id.* at 24.) Defendant Kawamura now moves the Court to certify an interlocutory appeal from this decision. (Doc. 97.)

## II. STANDARD OF REVIEW

Under Rule 54(b), a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review. A district court has discretion to certify an appeal of an interlocutory order if: (1) the order involves

3

Case 1:24-cv-00140-CLC-CHS   Document 106   Filed 04/14/25   Page 3 of 9   PageID #: 738

a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the controlling question of law; and (3) an immediate appeal may materially advance the termination of the litigation. 28 U.S.C. § 1292(b); *see also In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017); *W. Tenn. Chapter of Associated Builders and Contractors, Inc. v. City of Memphis (In re City of Memphis)*, 293 F.3d 345, 350 (6th Cir. 2002).

Certification for interlocutory appeal is granted "sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d at 350; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974) ("Restricting appellate review to final decisions prevents the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy.") As "[a]ttractive as it may be to refer difficult matters to a higher court for advance decision, such a course of action is contrary to our system of jurisprudence." *U.S. ex rel. Elliott v. Brickman Group Ltd., LLC*, 845 F. Supp. 2d 858, 863 (S.D. Ohio 2012) (quoting *Alexander v. Provident Life & Accident Ins. Co.*, 663 F. Supp. 2d 627, 639 (E.D. Tenn. 2009)).

The party seeking an interlocutory appeal bears the burden of showing that an immediate appeal is warranted. *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013). "[D]oubts regarding appealability should be resolved in favor of finding that the interlocutory order is not appealable." *In re Nat'l Prescription Opiate Litig.*, Nos. 1:17-md-2804, 1:18-op-45158-DAP, 2020 WL 3547011, at *1 (N.D. Ohio June 30, 2020) (internal quotation omitted).

### III. DISCUSSION

Defendant Kawamura argues he has met all three components of 28 U.S.C. § 1292(b) required for this Court to certify the interlocutory appeal. As this Court has already noted, the district courts within the Court of Appeals for the Sixth Circuit are split on whether a court may exercise personal jurisdiction over an out-of-state defendant lacking sufficient minimum contacts

4

using the theory of conspiracy. (Doc. 92 at 19.) For this reason, the parties agree that there is a substantial ground for difference of opinion here. (Doc. 94 at 3 n.2; Doc. 97 at 4–5.) The Court will therefore address only the remaining issues: whether the issue involves a controlling question of law and whether certifying appeal would materially advance ultimate termination of litigation.

### A. Controlling Question of Law

Defendant Kawamara first must show that his proposed issue for appeal involves a controlling question of law. This requirement can be broken into two sub-requirements: (1) The question involved must be one of law, and (2) it must be controlling. *Jackson Cnty. Employees' Ret. Sys. v. Ghosn*, No. 3:18-CV-01368, 2021 WL 2400302, at *3 (M.D. Tenn. June 11, 2021) (quoting *Lofgren v. Polaris Indus. Inc.,* 526 F. Supp. 3d 322, 330 (M.D. Tenn. 2021)). A question of law typically does not include matters within the discretion of the trial court and "[a] legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351 (citing *In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)). "The Sixth Circuit has . . . set a low bar for a determination that a question of law is 'controlling' in the context of a motion for certification under § 1292(b)." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875–76 (E.D. Mich. 2012).

Defendant Kawamura argues that "[w]hether a court may exercise personal jurisdiction over an out-of-state defendant lacking sufficient minimum contracts using the theory of conspiracy is a controlling question of law in this case." (Doc. 97 at 3.) In response, Plaintiffs argue that this question does not warrant interlocutory appeal because it is not a pure question of law. (Doc. 100 at 4.) Without citing any cases, Plaintiffs argue the Court of Appeals "has consistently held that challenges to personal jurisdiction typically involve mixed questions of law and fact and therefore is not the type of legal question that warrant[s] interlocutory appeal." (*Id.*)

The Court finds the motion to dismiss for lack of personal jurisdiction addressed a controlling question because if the Sixth Circuit were to decide that the theory of conspiracy does not apply, the Court would lack jurisdiction over this matter. *See Lofgren,* 526 F. Supp. 3d at 327 (finding that in deciding whether the political question doctrine applied the court addressed a controlling issue because it could affect whether the court would have jurisdiction over the matter). However, "the Court is not convinced that the application of [the conspiracy theory of personal jurisdiction] in this case is conducive with review of an isolated legal question." *See Jackson Cnty. Employees' Ret. Sys.*, 2021 WL 2400302, at *3.

"Questions of personal jurisdiction require serious scrutiny of the facts and intensive analysis of prior analogous cases, except for the most clear-cut issues which usually do not generate a motion to dismiss." *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, 250 F. Supp. 3d 296, 304 (W.D. Ky. 2017). The Court applied the conspiracy theory to the particular facts in this case to determine whether the Court could exercise personal jurisdiction over Defendant Kawamura. *Jackson Cnty. Employees' Ret. Sys.*, 2021 WL 2400302, at *3.

In ruling on the motion to dismiss, the Court found that the allegations were sufficient to establish personal jurisdiction at the motion-to-dismiss stage. It stated the following:

> [T]he Court turns to whether Defendant Kawamura joined the "common design" to accomplish an unlawful purpose. *See MedApproach Holdings, Inc. v. Hawkins*, No. 3:11-CV1199, 2012 WL 6569268, at *6 (M.D. Tenn. Dec. 17, 2012). Plaintiffs assert Defendant Kawamura joined at least one investor call during which he heard Mr. Frost make claims about ROI that he "knew or should have known" were false. (Doc. 1 ¶ 92.) Instead of correcting the claims, Defendant Kawamura "stuck his head in the sand and let [Mr.] Frost proceed to use ROI in his scheme to dupe investors into investing in ROI." (*Id.*) Additionally, while Defendant Kawamura had a duty in his role as CEO to ensure that the funds Mr. Frost, Defendant Dira, and others raised "were placed in ROI's operating account to be used solely for ROI's business operations, he instead "allowed [Mr.] Frost to divert these funds to

> his own personal use and to fund CF and [Mr.] Frost's other business ventures."
> (*Id.* ¶ 100.) . . .
>
> Defendant Kawamura was the CEO of the company at the center of the fraudulent scheme at issue in this matter. Given his alleged duty to monitor the company's finances, the Court finds the nature of the fraud and the relationship between the parties is circumstantial evidence of an agreement to accomplish a common purpose that survives a motion to dismiss. *See Hawkins*, 2012 WL 6569268, at *6. Accordingly, the Court finds that Plaintiffs state a claim that Defendant Kawamura joined a civil conspiracy and the Court has personal jurisdiction based on the conspiracy theory of judication.

(Doc. 92 at 23–24.)

This case-specific inquiry does not present a question of law but a mixed one of law and fact. *See Lofgren,* 526 F. Supp. 3d at 327. Nor does the inquiry involve "the sort of 'ephemeral questions of law that might disappear in the light of a complete and final record' for which § 1292(b) was designed." *C.C. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-CV-3799, 2024 WL 1347303, at *11 (S.D. Ohio Mar. 29, 2024) (internal citation omitted), *amended on other grounds by In re Hotel TVPRA Litig.*, No. 22-cv-3799, 2024 WL 4945135 (E.D. Ohio Dec. 3, 2024). Plaintiffs contend they "should be permitted to pursue discovery over [Defendant Kawamura] to further build the factual record of his conduct in supporting the scheme and any material contacts he had with Tennessee that would support personal jurisdiction over him." (Doc. 100 at 5.) The Court agrees and finds "[t]o certify the issue[] for interlocutory appeal now would . . .divest[] the Sixth Circuit of the opportunity to consider [it] in light of the 'richer factual and legal history' that would be created by allowing the issues to proceed 'through the normal channels of appeal.'" *C.C.*,

2024 WL 1347303, at *11. (internal citation omitted). Therefore, the Court finds that Defendant Kawamura has not met the first statutory requirement.

### B. Advancement of the Ultimate Termination of the Litigation

While this Court could begin and end its analysis with the first requirement, the Court will also quickly address the third requirement of § 1292(b). "The moving party satisfies the third requirement where the resolution of a controlling legal question would avoid trial, as well as when it would otherwise substantially shorten the litigation. In other words, an interlocutory appeal materially advances litigation when it saves judicial resources and litigant expense." *Lofgren,* 526 F. Supp. 3d at 329.

It is true that dismissal of all claims against Defendant Kawamura for lack of personal jurisdiction would save him the time and expense of trial. However, the claims asserted against Defendant Kawamura "are the same as those asserted against multiple defendants such that litigation will be conducted in substantially the same manner regardless of the court's decision." *See Jackson Cnty. Employees' Ret. Sys.*, 2021 WL 2400302, at *5 (citing *In re City of Memphis*, 293 F.3d at 351 ("[W]hen litigation will be conducted in substantially the same manner regardless of the court's decision, the appeal cannot be said to materially advance the ultimate termination of the litigation.")). As noted by Plaintiffs, discovery and trial preparation would proceed notwithstanding the appeal, and because Defendant Kawamura was the CEO of the company at the center of the fraud scheme, he would certainly be involved in the process regardless. For these reasons, the Court finds that Defendant Kawamura has also not met the third statutory requirement.

### IV. CONCLUSION

Accordingly, the Court **DENIES** Defendant Kawamura's motion to certify appeal under 28 U.S.C. § 1292(b). (Doc. 97.)

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**

9

Case 1:24-cv-00140-CLC-CHS    Document 106    Filed 04/14/25    Page 9 of 9    PageID #: 744