# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# CHATTANOOGA DIVISION

| | |
|---|---|
| STACY STROBL AND BRIAN HARDING, on behalf of themselves and all Others similarly situated, | Case No. 1:24-CV-00140-CLC-CHS<br>Hon. Curtis L. Collier<br>Magistrate Judge Christopher Steger |
| *Plaintiffs*, | |
| v. | |
| PAUL CROFT; JONATHAN FROST; RHINO ONWARD INTERNATIONAL, LLC; ROI FUND I, LLC; ROI FUND II, LLC; ROI FUND III, LLC; ROI FUND IV, LLC; BRIAN KAWAMURA; CROFT & FROST, PLLC; THE WELL FUND, LLC SCORPIO REF, LLC; MATTHEW DIRA; THE DIRA GROUP; CHESTNUT HOLDINGS, LLC; STEVEN FROST; LISA FROST; JOSEPH INVESTMENTS LLC; JANE AND JOHN DOES 1-25, | |
| *Defendants.* | |

### TRANSFEREE DEFENDANTS STEVEN L. FROST, LISA FROST AND JOSEPH INVESTMENTS, LLC'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Steven L. Frost, Lisa Frost, and Joseph Investments, LLC (collectively the "Transferee Defendants") respond to Plaintiffs' Proposed Findings of Fact and Conclusions of Law ("Plaintiffs' Proposed Findings of Fact") [Doc. 131], respectfully showing this Court as follows:

## I. Introduction

On August 29, 2024, the Clerk entered defaults against several defendants, including ROI Fund I, LLC [Doc. 75], ROI Fund II, LLC [Doc. 77], ROI Fund III, LLC [Doc. 78], ROI Fund IV, LLC [Doc. 79], Scorpio Ref, LLC [Doc. 80], Chestnut Holdings, LLC ("Chestnut Holdings") [Doc. 81], Croft & Frost, PLLC [Doc. 82], Jonathan Frost [Doc. 83], and Rhino Onward

International, LLC [Doc. 84]. Plaintiffs filed a Motion for Default Judgment against these Defendants on July 28, 2025 [Doc. 113]. Subsequently, the Court directed Plaintiffs to file proposed findings of fact and conclusions of law so the Magistrate could provide a recommendation on the Motion for Default Judgment ("December 8th Order"). [Doc. 130].

Meanwhile, Transferee Defendants' Motion for Summary Judgment [Docs. 120 & 121] remains pending. Plaintiffs' sole claim against Transferee Defendants involves alleged violations of the Tennessee Uniform Fraudulent Transfer Act (TUFTA). [Doc. 1, at p. 42-45]. This claim materially differs from Plaintiffs' claims against the other defendants, who are generally accused of participating in a scheme to defraud investors. Plaintiffs' claims against Transferee Defendants hinge on whether Chestnut Holdings is liable to Plaintiffs for any amounts.[1] Plaintiffs have failed to demonstrate in either their Complaint or Proposed Findings of Facts that Chestnut Holdings is liable to them. Accordingly, this Court should not enter judgment against Chestnut Holdings. It follows then that Plaintiffs' claims against Transferee Defendants under TUFTA must also fail.

## II. Plaintiffs' Claims Against Transferee Defendants Connection to Chestnut Holdings

Plaintiffs' only claim against Transferee Defendants is a purported violation of the Tennessee Uniform Fraudulent Transfer Act, T.C.A. §§ 66-3-301, *et. seq.* TUFTA provides:

> A transfer made or obligation incurred by a **debtor** is fraudulent as to creditor …
> if the debtor made the transfer or incurred the obligation:
>
> (1) With actual intent to hinder, delay, or defraud any creditor or debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer
> or obligation….

---

[1] Note, even if Chestnut Holdings is determined to be Plaintiffs' Debtor, Plaintiffs' claims against Transferee Defendants nonetheless fail as the at issue transfers were made via non-collusive public foreclosure sales. *See generally*, [Doc. 121].

T.C.A. § 66-3-305(a) (emphasis added). It is axiomatic that for a transfer to be fraudulent under TUFTA, the transfer must be made by a debtor. A "debtor" is defined as "a person who is liable on a claim." T.C.A. § 66-3-302(6). Additionally, remedies under TUFTA are "limited to creditors of debtors". *Perkins v. Brunger*, 303 S.W. 3d 688, 692 (Tenn. App. 2009).

Plaintiffs allege the transfer of two properties via a public foreclosure sale, specifically the building that formerly housed Defendant Croft & Frost, PLLC, located at 1413 Chestnut Street, Chattanooga, Tennessee (the "Building"), along with the adjoining lots (the "Lot"), was fraudulent. [Doc. 1, at pp. 42-45]. It is undisputed Chestnut Holdings owned the properties prior to their foreclosure. [Doc. 1, at ¶ 29]. For Plaintiffs' TUFTA claim to succeed, Chestnut Holdings must be legally considered Plaintiffs' debtor.

As outlined in Transferee Defendants' Memorandum in Support of Motion for Summary Judgment, Plaintiffs have admitted Chestnut Holdings is not liable to them. [Doc. 121, at p. 21].

> Q: You have nothing that would indicate there was – there is any liability of Chestnut Holdings, LLC, to repay your $25,000, correct?
> *Objection to form.*
> A: I don't have any documents to that effect, no.
> Q: And do you have any other proof that Chestnut Holdings, LLC, would be liable for your repayment of your $25,000?
> *Objection to form*.
> A: I do not have any proof, no. [Doc 121-1, at p. 6].
>
> Q: And we've also established Chestnut Holdings, LLC, is not the debtor, they did not sign anything, there is no basis for believing that there is any liability of Chestnut Holdings, LLC, to you, correct?
> *Objection to form*.
> A: Yes. [Doc. 121-2, at p. 14].

In response, Plaintiffs argued Chestnut Holdings' failure to appear or defend itself in this action would ultimately result in a judgment against it transforming Chestnut Holdings into Plaintiffs' debtor. [Doc. 124, at p. 19]. What Plaintiffs fail to acknowledge, and what is conspicuously absent from their Proposed Findings of Fact, is that notwithstanding the fact Chestnut Holdings

has not appeared, Plaintiffs have not met their burden of establishing Chestnut Holdings is liable to them for any amounts. Moreover, the time to amend the Complaint to add new allegations to support their claims has passed.[2]

### III. <u>Judgement Against a Defaulting Defendant is Not Automatic</u>

It is well-established Federal Rule of Civil Procedure Rule 55 does not blindly permit judgment without liability. *See Bailey v. Harrison*, No. 95-6263, 1997 U.S. App. LEXIS 2311, 1997 WL 49955, at *1 (6th Cir. Feb, 6, 1997)("Default judgments would not have been proper due to the failure to state a claim against these defendants"); *Harris v. Cooley*, No. 1:17-cv-540, 2019 U.S. Dist. LEXIS 62298, at *2 (S.D. Ohio Apr. 11, 2019) (quoting *Anderson v. Johnson*, 194 F.3d 1311 (6th Cir. Nov. 4 1999) ("Even if default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.")). "The first step when faced with an entry of default and a motion for default judgment is to determine whether the complaint's factual allegations provide a sufficient legal basis for the entry of a default judgment." *Certain Underwriters at Lloyd's London v. Alkabash*, No. 09-2711, 2011 U.S. Dist. LEXIS 26593, 2011 WL 938407, at *8 (W.D. Tenn. March 15, 2011). "Where a complaint fails to state a claim, a motion for default judgment should be denied." *Harris v. Cooley*, No. 1:17-cv-540, 2019 U.S. Dist. LEXIS 62298, at *3 (S.D. Ohio Apr. 11, 2019).

### IV. <u>Plaintiff has Failed to Show Liability as to Chestnut Holdings.</u>

Plaintiffs' only claims for relief as to Chestnut Holdings are for Civil Conspiracy under Count III [Doc. 1, at ¶¶ 146 – 159] and Violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO") under Count VII [Doc. 1, at ¶¶ 198 – 213].

---

[2] 4. (c) Final dates for the plaintiff to amend pleadings or to join parties: December 1, 2025. [Doc. 87, at p. 3].

a. <u>Plaintiffs Waived Their Civil Conspiracy Claims Against Chestnut Holdings.</u>

The December 8th Order explicitly required Plaintiffs to submit the following in their proposed findings of fact and conclusions of law:

> 1) the elements of each cause of action for which Plaintiffs seek damages, supported by legal authority;
> 2) a description of the burden of proof and who bears the burden of proof for each cause of action for which Plaintiffs seek damages, supported by legal authority;
> 3) the type of damages permitted for each cause of action for which Plaintiffs seek damages, supported by legal authority;
> 4) a detailed description and break-down of all damages requested;
> 5) if interest is requested, a compilation of interest and how that interest is calculated, supported by legal authority; and
> 6) if attorney fees and/or costs are requested, citation of legal authority supporting an award of such fees and costs, as well as detailed invoices. [Doc. 130, at pp. 1-2].

The December 8th Order further states: "Failure to comply with these requirements as to any cause of action stated in the Complaint will be deemed a waiver of recovery under that cause of action." *Id*. at p. 2.

Plaintiffs Proposed Findings of Fact make no mention of liability under Count III for civil conspiracy. As a result, Plaintiffs have waived any right to recover against Chestnut Holdings under Count III of the Complaint.

b. <u>Plaintiffs Failed to Allege Chestnut Holdings is Liable to them Via a RICO Violation.</u>

Neither Plaintiffs' Complaint nor their Proposed Findings of Fact, sufficiently allege Chestnut Holdings is liable to them for RICO violations. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

RICO claims require plaintiffs plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012)(punctuation modified).

### 1. *Plaintiffs Fail to Allege Chestnut Holdings is Part of an Enterprise.*

Under 18 U.S.C. § 1961(4), an "enterprise" is defined to include "any union or group of individuals associated in fact although not a legal entity." In their Complaint and Proposed Findings of Fact, Plaintiffs fail to make any allegations connecting Chestnut Holdings to the purported enterprise. Plaintiffs state:

> As noted in the previous sections, Frost, Croft, the ROI Defendants, the Well Fund, Plummer, Dira, and Scorpio along with John Does 1-25 formed and association-in-fact with each other for the purpose of duping investors into providing investments into ROI (the "ROI Investment Scheme"). [Doc. 1, at ¶52].
>
> Frost, Croft, the ROI Defendants, the Well Fund and Scorpio formed an association-in-fact with each other for the purpose of duping investors into providing investments into ROI (the "ROI Investment Scheme"). [Doc. 131, at ¶52].

As shown above, Plaintiffs have left out Chestnut Holdings from its definition of the purported association-in-fact. There is simply no claim outlining that Chestnut Holdings is a part of the alleged enterprise. Consequently, there is no basis for holding Chestnut Holdings liable under a RICO theory.

### 2. *Plaintiffs Fail to Allege Chestnut Holdings Committed Any Predicate Acts*.

Plaintiffs must plead sufficient facts to establish the existence of a pattern of racketeering activity. *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994). "A pattern requires at least two predicate acts of racketeering activity within ten years of each other." *Id*. The acts must have "relatedness" and "continuity". *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989). In both the Complaint and Proposed Findings of Fact, Plaintiffs' only alleged predicate

acts center on wire fraud; however, Plaintiffs fail to plead specifics regarding these wires' connection to Chestnut Holdings.

> Pursuant to 18 U.S.C. § 1961(5), a 'pattern of racketeering activity' requires at least two acts of racketeering activity within 10 years. The aforementioned wire transfer activities constitute more than 2 acts of wire fraud and occurred between 2022 to the present. [Doc. 1, at ¶ 209].

> They required victims of the investment scheme like Plaintiffs Strobl and Harding to send money by wire transfer to bank accounts controlled by Frost and Plaintiffs and others in fact sent money over wire transfer based on the material misrepresentations and omissions set forth above. [Doc. 131, at ¶52].

There is simply no allegation any amounts were wired to an account held by Chestnut Holdings. Accordingly, there is no allegation Chestnut Holdings committed any predicate act to make it liable under Plaintiffs' RICO claims. Absent an allegation of a specific predicate act, Chestnut Holdings cannot be found liable to Plaintiffs.

### c. Plaintiffs Have Failed to Allege Chestnut Holdings is an Alter Ego of Jonathan Frost.

Plaintiffs have failed to assert Chestnut Holdings is an alter ego of Jonathan Frost ("Frost"), despite having an "Alter Ego" section in their Complaint. [Doc. 1, at ¶¶110 – 119]. There are no allegations Frost comingled Chestnut Holdings' assets or disregarded corporate formalities. Moreover, the Transferee Defendants specifically highlighted this omission in their Memorandum of Law supporting their Motion for Summary Judgment [Doc. 121, at p. 19], yet Plaintiffs have made no effort to address or remedy these deficiencies. In fact, Plaintiffs' Proposed Findings of Fact fail to make any mention of Chestnut Holdings in any paragraphs supporting the alter ego:

> Frost should be held individually liable for the wrongdoing of each of Well Fund, Rhino Onward International, LLC, ROI Fund I, LLC, ROI Fund II, LLC, ROI Fund III, LLC, and ROI Fund IV, LLC Defendants. [Doc. 131, at ¶43].

> Moreover, as agents and corporate representatives of CF, Well Fund, Rhino Onward International, LLC, ROI Fund II, LLC, ROI Fund III, LLC, ROI Fund

IV, LLC and Scorpio Ref LLC each entity is responsible for the individual liability of each corporation and adhering to corporate form in this instance would promote fraud and injustice. [Doc. 131, at ¶44].

Considering Plaintiffs have failed to make any allegation Chestnut Holdings is an alter ego of Frost, Plaintiffs' pleading deficiencies as to Chestnut Holdings are not saved by any allegations as to Frost.

d. <u>Plaintiffs Have Conceded Chestnut Holdings Is Not liable to them.</u>

Plaintiffs cannot credibly request a default judgment be entered against Chestnut Holdings when they have explicitly admitted they have no basis to assert Chestnut Holdings is liable to them for any amounts. During their depositions, Plaintiffs provided the following testimony regarding Chestnut Holdings:

> Q: You have nothing that would indicate there was – there is any liability of Chestnut Holdings, LLC, to repay your $25,000, correct?
> *Objection to form.*
> A: I don't have any documents to that effect, no.
> Q: And do you have any other proof that Chestnut Holdings, LLC, would be liable for your repayment of your $25,000?
> *Objection to form.*
> A: I do not have any proof, no. [Doc 121-1, at p. 6].
>
> Q: And we've also established Chestnut Holdings, LLC, is not the debtor, they did not sign anything, there is no basis for believing that there is any liability of Chestnut Holdings, LLC, to you, correct?
> *Objection to form.*
> A: Yes. [Doc. 121-2, at p. 14].

In light of these clear admissions, Plaintiffs are in no position to argue Chestnut Holdings is their Debtor. Their sworn testimony, acknowledging the complete lack of supporting evidence, eliminates any grounds for such a claim. A default judgment would not be appropriate under these circumstances.

8

## V. Conclusion

For the foregoing reasons, a default judgment should not issue against Chestnut Holdings. Although Chestnut Holdings has failed to appear, Plaintiffs have not met their burden of adequately pleading liability as to Chestnut Holdings. More importantly, both Plaintiffs have admitted under oath that they do not know nor have any proof as to why Chestnut Holdings would have any liability to them. The time to amend pleadings has expired. Therefore, the Court should decline to enter default as to Chestnut Holdings. It follows then that Transferee Defendants' Motion for Summary Judgment should also be granted.

Respectfully submitted,

**PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**

By: /s/ *Gary R. Patrick*
Gary R. Patrick, BPR #01941
Cara J. Alday, BPR #13140
Attorneys for Defendant
537 Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117
(423) 267-5032 facsimile

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has been served via hand delivery, facsimile or first class mail, with sufficient postage affixed thereon to ensure proper delivery, upon:

| | |
|---|---|
| Benjamin A. Gastel<br>Alyson S. Beridon<br>Herzfeld, Suetholz, Gastel,<br>Leniski & Wall, PLLC<br>223 Rosa L. Parks Avenue, Suite 300<br>Nashville, TN 37203<br>ben@hsglawgroup.com<br>alyson@hsglawgroup.com<br><br>*Counsel for Plaintiff* | J. Michael Holloway<br>Mark W. Litchford<br>Christopher M. Gant<br>Litchford, Pearch & Associates<br>P.O. Box 8127<br>Chattanooga, TN 37414<br>michael@lpafirm.com<br>mark@lpafirm.com<br>chris@lpafirm.com<br><br>*Counsel for Well Fund* |

This 22nd day of January 2026.

**PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**

**By:** /s/ *Gary R. Patrick*
Gary R. Patrick