| | |
|---|---|
| STACY STROBL, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) Case No.: 1:24-cv-140 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| JONATHAN FROST, *et al.*, | ) Magistrate Judge Christopher H. Steger |
| | ) |
| *Defendants*. | ) |

## <u>M E M O R A N D U M</u>

Before the Court is a motion by Defendants Steven Frost, Lisa Frost, and Joseph Investments, LLC (collectively, "Transferee Defendants") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 120.) Plaintiffs, Stacy Strobl and Brian Harding, responded in opposition (Doc. 124), and Transferee Defendants replied (Doc. 127). Plaintiffs filed a supplemental brief (Doc. 128) and Transferee Defendants responded (Doc. 129).[1]

## I.     **<u>BACKGROUND</u>**[2]

This dispute arises out of the financial collapse of Jonathon Frost and his fraudulent investment scheme. (*See generally* Doc. 1 (civil case); *United States v. Jonathan Frost*, 1:26-CR-4 (E.D. Tenn.) (criminal case).) Jonathan Frost co-owned and operated Croft & Frost, PLLC, an

---

[1] The parties were previously notified to conform to this court's Judicial Preferences, specifically, placing citations in the text of the document, rather than in footnotes. (*See* Doc. 62.) Both parties have failed to do so in their briefs. The Court instructs the parties to review those preferences and follow the appropriate formatting in future filings. (*See* Judicial Preferences of Curtis L. Collier, https://www.tned.uscourts.gov/content/curtis-l-collier-senior-united-states-district-judge.)

[2] Where the facts set out by the parties are disputed, the Court has viewed the evidence in the light most favorable to Plaintiffs and drawn all reasonable inferences in their favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

accounting firm, and Rhino Onward International, LLC, an associated fraudulent investment scheme. Both of these endeavors failed, leaving Jonathan Frost with extreme debt.

Jonathan Frost was also the sole member of Chestnut Holdings, LLC ("Chestnut Holdings"). Chestnut Holdings was the sole owner of two adjoining properties, 1413 Chestnut Street and 1419 Chestnut Street (collectively, "the Properties"). As will be explained in more detail below, the Properties were ultimately purchased at foreclosure auctions by Jonathan Frost's father and an entity controlled by him. The crux of this case is the circumstances surrounding this transfer of property.

In April 2019, Chestnut Holdings entered into a $6,500,000 loan agreement with First Horizon Bank to purchase the 1413 Chestnut Steet property. (Doc. 124-2 at 2–46.[3]) Steven Frost, in his personal capacity, was a co-guarantor on the loan from First Horizon Bank ("First Horizon") to Chestnut Holdings. (*Id*. at 2–5, 37–46.)

In September 2020, Chestnut Holdings breached its financial covenant on the loan. (Doc. 124-2 at 47.) First Horizon agreed to waive default if Steven Frost executed an amendment to become a co-borrower in addition to being a guarantor. (*Id*.) When, in March 2023, Chestnut Holdings again breached the loan agreement and the loan went into default, First Horizon again waived the default pursuant to Steven Frost executing an additional amendment. (Doc. 124-2 at 55.)

In June 2023, Steven Frost loaned Chestnut Holdings $1,550,000, with which it purchased the 1419 Chestnut Street property. (Doc. 124-2 at 58–79; Doc 121-3 at 22–23.) In return, Steven Frost received a secured promissory note and an interest in both of the Properties as collateral. (Doc. 124-2 at 58–79; Doc. 121 at 10.)

---

[3] Citations reference CM/ECF pagination, rather than original document pagination.

In September 2023, Chestnut Holdings publicly listed the 1413 Chestnut building for sale for ten million dollars.  (Doc. 124-3 at 29–32.)  The property was not sold.

On October 13, 2023, Steven Frost received a notice of default from First Horizon.  (Doc. 124-1 at 52.)  In response, on November 14, 2023, Steven Frost formed Joseph Investments, LLC ("Joseph Investments"), of which he was the sole member, and transferred his own funds into it.

On November 17, 2023, three days after Joseph Investments was formed, it acquired the deed of trust for 1413 Chestnut Street from First Horizon through a loan purchase agreement for all rights, title, obligations, and interest of the loan and loan documents.  (Doc 124-1 at 55–67.)  By doing so, it became the beneficiary and secured party under the deed of trust, permitting it to exercise all associated legal remedies.  (*Id.*)

On November 21, 2023, Joseph Investments sent a notice of acceleration of indebtedness to all borrowers and guarantors on the loan.  (Doc. 121-4 at 2.)  On December 20, 2023, Joseph Investments sent a notice of foreclosure sale to these parties, including the official to-be-published notice of the sales to be held on January 24, 2024.  (Doc. 124-2 at 88; Doc. 121-3 at 188–196.)  The notice of foreclosure was published in the *Hamilton Country Herald* newspaper on December 22, 2023, December 29, 2023, and January 5, 2024.  (Doc. 124-2 at 94–96)

At the foreclosure auction on January 24, 2024, at 10:00 a.m., Joseph Investments purchased the 1413 Chestnut Street property for $4,600,000.  (Doc. 121-3 at 200-07.)  Joseph Investments was the only bidder.  (Doc. 121 at 9.).  On the same day, at 2:00 p.m., Steven Frost purchased the 1419 Chestnut Street property for $1,200,000.  (Doc 121 at 11; Doc 1 ¶ 185.)  He was the only bidder.  (Doc 121 at 11.)  There was only one other non-affiliated person present at the auction.

3

Upon recording the 1419 deed, Steven Frost quitclaimed the property to Joseph Investments, which recorded the deed. (Doc. 121-3 at 210.) Upon purchasing the 1419 property, Joseph Investments recorded the deed and took possession of the property.

## II.     STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The Court may not make credibility determinations or weigh the evidence in addressing a motion for summary judgment. *Id.* at 255. If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-

4

cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

While the movant bears the burden of establishing that there is no genuine dispute of material fact, "she can meet that standard by showing that the non-moving party lacks evidence to support an essential element of her case." *Randle v. Lewis,* No. 24-1888, 2025 U.S. App. LEXIS 10728 (6th Cir. May 1, 2025). Under Rule 56(c)(1)(B) of the Federal Rules of Civil Procedure, a party asserting that a fact cannot be or is genuinely disputed must support the assertion by showing "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). However, "a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986). A movant can challenge the nonmovant "'to put up or shut up on a critical issue,' and if it does 'not put up, summary judgment [is] proper.'" *Lansky v. Prot. One Alarm Monitoring, Inc.*, No. 17-2883, 2019 U.S. Dist. LEXIS 22275, at *4 (W.D. Tenn. Feb. 12, 2019) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)) (alteration in original).

## III. <u>DISCUSSION</u>

Defendants seek summary judgment on Count VI of Plaintiffs' complaint (Doc. 1 at 42). Transferee Defendants were named in the complaint "solely for asserting Count VI." (*Id*. at 9.)

5

Plaintiffs' prayer for relief includes that the conveyances of the two Chestnut Street properties be adjudged fraudulent and void, set aside, and ordered sold for the satisfaction of Plaintiffs' judgement(s). (*Id*. at 45.)

### A. Liability Under TUFTA

Count VI of the complaint asserts claims under the Tennessee Uniform Transfers Act ("TUFTA"). Tenn. Code Ann. §§ 66-3-301 *et seq*. By function of being a uniform statute, it "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this part among states enacting it." *Id*. § 66-3-312. Thus, the Court may look beyond Tennessee to its sister states and circuits for guidance.

TUFTA allows "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." *Id*. § 66-3-308. TUFTA incorporates both the "principles of law and equity." *Id*. § 66-3-311. "Tennessee courts have applied equitable principles to scrutinize the economic realities of transactions in a variety of situations." *Hawk v. Comm'r*, 924 F.3d 821, 828 (6th Cir. 2019).

A transfer is fraudulent under TUFTA "if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." *Id*. § 66-3-306(a).

Under TUFTA, the term "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." *Id*. § 66-3-302(12).

Before reaching the merits, Transferee Defendants challenge whether Chestnut Holdings is liable to Plaintiffs. Liability under TUFTA focuses on debtors and creditors. TUFTA defines a

6

debtor as "a person who is liable on a claim." Tenn. Code. Ann. § 66-3-302(6). And a creditor as "a person who has a claim." *Id*. § 66-3-302(4). Because Chestnut Holdings was the legal owner of the properties prior to the transfer, to succeed on their claim, Plaintiffs must demonstrate that Chestnut Holdings is their debtor.

In their complaint, as it relates to Count VI, Plaintiffs only allege Jonathan Frost is the debtor. (Doc. 1 ¶ 186.) Transferee Defendants' motion for summary judgment claims that Chestnut Holdings is the relevant entity for this inquiry, since it owned the properties prior to the transfer, not Jonathan Frost. (Doc. 121 at 21–22.) Therefore, Transferee Defendants argue that they are not liable to Plaintiffs, because Chestnut Holdings is not a "debtor" as to Plaintiffs. (*Id*.) In response, Plaintiffs claim that, due to a pending default motion against Chestnut Holdings and Jonathan Frost, both of whom were served but have not appeared in this action, Plaintiffs "will obtain a final and liquidated judgment against both parties." (Doc. 124 at 19.) Plaintiffs argue that this "will conclusively establish Chestnut Holdings and Jonathan Frost as "debtors" within the meaning of TUFTA." (*Id*.)

However, the entry of default judgment is not certain. Transferee Defendants filed a brief in opposition (Doc. 133) to Plaintiff's proposed findings of fact (Doc. 131) urging the Court to not enter default against Chestnut Holdings due to an absence of demonstrated liability to Plaintiffs. The motion for default judgment (Doc. 113) was denied without prejudice on February 27, 2026. (Doc. 135.) The Court found that "Plaintiffs' Proposed Findings of Fact and Conclusions of Law provides an inadequate roadmap for the Court to grant Plaintiffs' Motion for Default Judgment." (*Id*. at 2) (citations omitted).

Thus, the Court rejects Plaintiff's assertion that liability is "firmly established" because of "imminent entry of judgment" against Chestnut Holdings. (Doc. 124 at 20.) The Court declines

to accept a theory of liability that is, at this stage, conclusory and purely speculative. Entitlement to relief must be pleaded in the Complaint. (Fed. R. Civ. P. 8(a)(2). Since the causes of action against Transferee Defendants and Chestnut Holdings are raised in the same complaint, it is improper to premise the liability of one off the prospective judgment against the other. Therefore, the Court does not find that Plaintiffs have established independent liability of Chestnut Holdings.

Plaintiffs have, however, sufficiently pleaded facts demonstrating that Jonathan Frost may be held liable to them. (*See generally* Doc. 1.) Plaintiffs then also hang their hat on an implicit presumption that Jonathan Frost and Chestnut Holdings are synonymous. (S*ee, e.g.*, Doc. 1 ¶¶ 184, 187 describing "Frost's building.") Similarly, their theory of liability under TUFTA requires Steven Frost to be synonymous with Joseph Investments. If both are the case, Plaintiffs assert, then there is an insider relationship evidencing fraudulent intent of the transfer of properties.

If Plaintiffs cannot demonstrate the individuals and their corresponding corporate entities should be held indistinguishable from one another, there can be no liability and an analysis of the transaction itself under TUFTA is not necessary. Thus, the preliminary matter is dispositive.

### B.     Alternate Ego and Piercing the Corporate Veil

Generally, individuals who comprise the management or ownership of an entity are not necessarily synonymous with that entity, nor are their personal relationships necessarily imputed to the entity. Principals of a limited liability company ("LLC") are considered separate from, and shielded from, the actions and liabilities of their LLC and vice versa. *See* Tenn. Code Ann. § 48-249-114(a)(1)(B) (2024); Tenn. Code Ann. § 48-215-101(a) (2024); *Spradlin v. Beads & Steeds Inns, LLC* (*In re Howland*), 674 F. App'x 482, 485 (6th Cir. 2017) (citing *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998). There are, however, exceptions to this rule which permit

8

piercing the corporate veil. *In re Howland*, 674 F. App'x at 485 ("[F]or as long as the veil between corporation and shareholder has existed, courts have 'pierced' it.").

"The separate identity of a corporation may be disregarded upon a showing that it is a sham or a dummy or where necessary to accomplish justice." *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 930 (6th Cir. 2020) (quoting *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)). While veil piercing and alternate-ego theory are distinct legal concepts, "[t]he analysis and effects are similar." *Id.* at 930. "The party seeking to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to relief." *Id.* at 931 (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 215 (Tenn. 2012)). Tennessee applies the doctrine equally to LLCs as it does to corporations. *See Canter v. Ebersole,* No. E2005-02388-COA-R3-CV, 2006 Tenn. App. LEXIS 401, at \*4 n. 5 (Tenn. Ct. App. May 13, 2006) (citing *Chopra v. U.S. Pro.s, LLC.*, No. W2004-01189-COA-R3-CV, 2005 Tenn. App. LEXIS 62, at \*4 (Tenn. Ct. App. Feb. 2, 2005). "Federal courts generally find that '[a]lter ego is not a separate cause of action for which relief can be granted; rather, . . . alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity." *Kantor v. BigTip, Inc.*, 2018 U.S. Dist. LEXIS 57265, \*22 (W.D. Wash. April 3, 2018) (Quoting Oginsky v. Paragon Props. of Costa Rica Ltd. Liab. Co., 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011).

"Whether the veil should be pierced is an equitable determination that must be made after considering the 'entire spectrum of relevant facts.'" *Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC*, No. 09-6480, 2014 U.S. Dist. LEXIS 172588, \*13 (D.N.J Dec. 15, 2014) (quoting *Grand Rapids Assoc. Ltd. P'ship v. Coop Prop., LLC*, 495 F. App'x 598, 601 (6th Cir. 2012). But "[p]iercing the corporate veil in reverse—that is, holding an entity liable for the debts or obligations of its owner—is much less common and much more controversial." *Church Joint*

9

*Venture*, 947 F.3d at 931.  "The Tennessee Supreme Court has only recognized the concept of reverse piercing in the context of a parent/subsidiary relationship . . . . [I]n the corporation/shareholder context, it has never adopted it."  *Id*. at 932 (alterations in original) (quoting *Church Joint Venture v. Blasingame*, No. 12-2999, 2016 U.S. Dist. LEXIS 189261, 2016 WL 3248044, at *8 (W.D. Tenn. Jan. 13, 2016)).

To pierce the veil, "[t]here must be such a unity of interest and ownership that the separate personalities of the corporation and its owner cease to exist, and the circumstance must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *United States v. Cordova Chem. Co. of Michigan,* 113 F.3d 572, 580 (6th Cir. 1997), *vacated on other grounds*, *Bestfoods v. Aerojet-Gen. Corp.*, 524 U.S. 924 (1998).  Courts have invoked their equitable power to pierce the veil when the corporate form was abused by family members to fraudulently transfer assets.  As noted in *Wells Fargo Rail Corp. v. Black Iron, LLC* (*In re Black Iron, LLC)*:

> Transferees should not be able to escape fraudulent transfer liability merely by incorporating and then directing that the assets be transferred to wholly controlled incorporated entities, as discussed in the following cases which are persuasive to the Court. *See Matter of Galaz*, 850 F.3d 800, 803, 805 (5th Cir. 2017) (concluding that a transfer of assets to an LLC wholly owned by the debtor's father was a transfer to an insider); *see also In re Fortune Nat. Res. Corp.*, 350 B.R. 693, 696 (Bankr. E.D. La. 2006) ("Certainly Congress' reasons for requiring heightened scrutiny for certain individuals apply with equal force to entities entirely controlled by such individuals."); *SE Prop. Holdings, LLC v. Center*, 2017 U.S. Dist. LEXIS 124708, 2017 WL 3403793, at *20 (S.D. Ala. Aug. 8, 2017) (concluding that an LLC controlled by the debtor's family members was an insider). "To hold otherwise would be to eviscerate this section of the [Uniform Fraudulent Transfer Act] by inviting insiders to escape judicial scrutiny simply by incorporating themselves." *In re Fortune*, 350 B.R. at 696. (concluding that where an individual "is without question an insider of the debtor, it would be both folly and a triumph of form over substance to hold that the LLC over which [the individual] exerts complete control is not an insider.").

609 B.R. 390, 408 (Bankr. D. Utah 2019) (vacated in part on other grounds) (alterations in original).

10

Nonetheless, facts alone do not speak for themselves. "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). "The parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (internal quotes omitted) (quoting *Sineneng-Smith*, 590 U.S at 375). This principle requires parties to make their case rather than the court advancing the facts and arguments for them. *Sineneng-Smith*, 590 U.S at 375–376.

In *Riley v. Tencara, LLC*, the court declined to find alter ego liability or pierce the veil based on insider status because the Trustee did not specifically address, much less establish, that the LLC was a mere instrumentality of the individual. 447 B.R. 1 at 36 (Bankr. D. Mass. 2011). For example, no evidence was presented regarding capitalization, record keeping, or appropriate formalities. *Id.*; *See also W. Tenn. Air Serv., LLC v. WTAS LLC*, No. 1:23-cv-1132, 2025 U.S. Dist. LEXIS 60620, *17 (W.D. Tenn. Mar. 31, 2025) ("Plaintiffs . . . did not plead sufficient facts to show that the corporate veil should be pierced.").

In this case, Jonathon Frost was the sole owner and director of Chestnut Holdings. His father, Steven Frost, is the sole owner and director of Joseph Investments. Both Chestnut Holdings and Joseph Investments are LLCs. As a result of the foreclosure sales, Joseph Investments became the owner of the two properties previously owned by Chestnut Holdings. Plaintiffs allege this constitutes "a classic insider relationship." (*Id.* at 13.) While this assertion has intuitive appeal, legally it is not so simple.

There is a presumption courts will honor the corporate structure unless given compelling reason to do otherwise. *Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 675 (6th Cir. 2006) ("In [] Tennessee . . . , "[t]he principle of piercing the fiction of the corporate veil is to be applied

11

with great caution and not precipitately, since there is a presumption of corporate regularity.'') (quoting *Schlater*, 833 S.W.2d at 925). Plaintiffs have failed to raise arguments to do so. Plaintiffs have not introduced evidence to support the extreme remedy of piercing the veil, such as evidence on corporate formalities not being observed, undercapitalization, diversion or manipulation of assets, or failure to maintain arms-length relationships among entities. Plaintiffs merely have vaguely raised factors such as sole ownership by one individual, use of the same attorneys, and use of the corporation as a diversion of assets or subterfuge in this alleged fraudulent transfer. When "the party seeking to pierce the veil can show little more than the fact that it remains an unpaid creditor, such a showing falls short of establishing that the corporate form was used to promote injustice." *Layne Christensen Co. v. City of Franklin*, 449 F. Supp. 3d 748, 762 (M.D. Tenn. 2020) (citing *Marshall v. Jackson*, No. M2007-01764-COA-R3-CV, 2008 Tenn. App. LEXIS 762, at * 9 (Tenn. Ct. App. Dec. 8, 2008).

Plaintiffs have introduced alter-ego theory and piercing the corporate veil in other findings in this civil action. (*See, e.g.*, Doc 1 [Complaint] ¶¶ 110–119; Doc 131 [Proposed Findings of Fact for Motion for Default Judgment] ¶¶ 15–17.) However, the Court declines to impute arguments against separate defendants from other parts of this civil action against the Transferee Defendants in this portion of the dispute. *See InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.")

This is particularly the case since the Transferee Defendants were explicitly named as only relevant to Count VI of the complaint. (Doc. 1 ¶¶ 30–32.) The complaint has a section dedicated to "Alter Ego Liability," yet it does not address either Chestnut Holdings or Joseph Investments.

12

(*Id*. ¶¶ 110–19.) In fact, Plaintiffs asserted this theory against every defendant in the complaint, except those at issue here. The Court declines to introduce these arguments *sue sponte* on behalf of Plaintiffs. (*See Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992) ("[I]t seems to us utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion.")

Based on the analysis above, the Court cannot treat Chestnut Holdings or Joseph Investments as synonymous with their directors. Accordingly, there is no basis under TUFTA for Chestnut Holdings to be Plaintiff's debtor. Having no theory of liability, the Court need not at this time address the merits of Plaintiff's assertion of an insider relationship or other badges of fraud indicating the presence of a fraudulent transaction.

## IV.    **CONCLUSION**

Plaintiffs have failed to establish Chestnut Holdings is a debtor liable to plaintiffs under TUFTA. They have therefore not met their burden of raising a genuine issue of material fact for trial and Transferee Defendants are entitled to judgment as a matter of law. Consequently, the Court will **GRANT** Defendants' motion for summary judgment (Doc. 120). The Court will **DISMISS WITH PREJUDICE** the claims against Transferee Defendants.

AN APPROPRIATE ORDER WILL ENTER.

/s/ _____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

13