## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

| | |
|---|---|
| STACY STROBL and BRIAN HARDING, on behalf of themselves and all others similarly situated,<br><br>                       Plaintiffs,<br><br>        v.<br><br>PAUL CROFT; JONATHAN FROST; RHINO ONWARD INTERNATIONAL, LLC; ROI FUND I, LLC; ROI FUND II, LLC; ROI FUND III, LLC; ROI FUND IV, LLC; BRIAN KAWAMURA; CROFT & FROST, PLLC; THE WELL FUND LLC; SCORPIO REF, LLC; MATTHEW DIRA; THE DIRA GROUP; CHESTNUT HOLDINGS, LLC; STEVEN FROST; LISA FROST; JOSEPH INVESTMENTS, LLC; JANE and JOHN DOES 1-25,<br><br>                       Defendants. | Case No. 1:24-cv-00140<br>**JURY DEMANDED**<br>Judge: Curtis L Collier<br>Magistrate Judge: Christopher H Steger |

---

## <u>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT</u>

On April 6, 2026, the Transferee Defendants filed a Response (DE# 140) to Plaintiffs Stacy Strobl and Brian Harding ("Plaintiffs"), Renewed Motion for Default Judgment against Defendants ROI Fund I, LLC; ROI Fund II, LLC; ROI Fund III, LLC; ROI Fund IV, LLC; Scorpio Ref, LLC; Chestnut Holdings, LLC; Croft & Frost,

PLLC; Jonathan Frost; and Rhino Onward International, LLC (collectively, the "Defaulting Defendants").

As set forth below, the Transferee Defendants' arguments mischaracterize the scope of the Complaint, the Revised Findings of Fact, and the evidentiary record—particularly as supplemented by Jonathan Frost's federal plea agreement (DE# 137-1 "Plea Agreement").

When the Complaint's well-pleaded allegations are taken as true, as they must be upon entry of default, and when the Plea Agreement's admissions are considered, Chestnut Holdings is plainly implicated as an instrumentality of the fraudulent enterprise operated by Frost and his co-conspirators.

## I.    The Legal Standard Favors Entry of Default Judgment.

As this Court recognized in its February 27, 2026 Order (DE# 135), the entry of default judgment under Rule 55(b)(2) is within the Court's discretion. However, once default is entered, "[t]here is no question that…each of [plaintiffs'] allegations of fact must be taken as true and each of its claims must be considered established as a matter of law." *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (internal quotations and citations omitted). The Clerk entered default against Chestnut Holdings on August 29, 2024 (DE# 81).

Accordingly, the factual allegations of the Complaint concerning Chestnut Holdings are established as a matter of law. The question is whether those allegations, taken as true, state a viable claim—and they do.

2

## II. The Complaint and Record Establish Chestnut Holdings' Role in the Fraudulent Enterprise.

### a. *Chestnut Holdings Was an Instrumentality of Frost's Scheme.*

The Transferee Defendants' argument proceeds from an artificially narrow reading of the record. They assert that Chestnut Holdings is "conspicuously absent" from the Revised Findings of Fact. DE# 140 at PageID 1771. This ignores both the Complaint's allegations and the structural role Chestnut Holdings played in Frost's enterprise.

The Complaint alleges that Chestnut Holdings, LLC was a Tennessee limited liability company with its principal office at 1413 Chestnut Street, Suite 401, Chattanooga, Tennessee—the very same address as Croft & Frost, PLLC, ROI Fund I through IV, and the other entities Frost controlled. DE# 1, Complaint ¶ 29. Jonathan Frost was the sole member of Chestnut Holdings, and Chestnut Holdings owned the building where CF operated. DE# 1, ¶ 29. This is not a peripheral entity. Chestnut Holdings owned the physical headquarters from which the entire fraudulent scheme was orchestrated.

The Complaint further alleges that Frost and Croft commingled funds among their controlled entities, including transfers that sustained CF's operations. DE# 1, ¶¶ 114–115. The Plea Agreement confirms that investor funds obtained through wire fraud were transferred to bank accounts used for paying employees at "Frost's accounting firm in Chattanooga"—the firm housed in the building owned by Chestnut Holdings. (Plea Agreement, ¶ 3 at 5.)

The Plea Agreement further establishes that Frost and his co-conspirators engaged in financial transactions exceeding $10,000 with proceeds of wire fraud, and that Frost agreed to forfeit property traceable to these offenses, including a personal money judgment of no less than $70,000,000. (Plea Agreement, ¶ 9 at 8.)

The Complaint specifically alleges that after CF shuttered in September 2023, "the building housing CF was put up for sale for $10,000,000." DE# 1, ¶ 64. That building was owned by Chestnut Holdings. DE# 1, ¶ 29. The proceeds of the enterprise thus flowed through and benefited Chestnut Holdings directly—investor funds sustained CF's operations in the building Chestnut Holdings owned, and the appreciation of that real estate asset was itself a benefit of the scheme.

### b. *Chestnut Holdings Is Liable Under RICO as an Instrumentality of the Enterprise.*

The Transferee Defendants argue that Plaintiffs must demonstrate Chestnut Holdings itself committed a predicate act of wire fraud. This misstates the applicable legal standard. Under civil RICO, liability extends to persons who conduct or participate in the conduct of an enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c).

The Sixth Circuit has held that an association-in-fact enterprise need only have a common purpose, established relationships among the associates, and enough longevity to permit the associates to pursue the enterprise's purpose. *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793-95 (6th Cir. 2012). It does not require hierarchical organization structures and does not require each member to have fixed

4

roles but rather a plaintiff must show "simply a continuing unit that functions with a common purpose." *Id.* at 794.

Here, the Complaint alleges that Frost personally conducted the racketeering activity "within the scope of his agencies" for each of the Defaulting Defendants, including Chestnut Holdings. DE# 1, ¶¶ 119, 200, 212. The Complaint further alleges that all of the entities controlled by Frost—expressly including Chestnut Holdings—were "being used for fraudulent purposes and adhering to the corporate form here would promote fraud and injustice." DE# 1, ¶ 117.[1]

The well-pleaded allegations establish that Frost was the sole member of Chestnut Holdings and that he used Chestnut Holdings, along with other entities, as instrumentalities of the enterprise.

Frost's control of Chestnut Holdings is undisputed—he was its sole member and controlled its sole asset, the building at 1413 Chestnut Street. DE# 1, ¶ 29. The building was critical infrastructure of the enterprise: it housed CF, which the Plea Agreement identifies as integral to the wire fraud scheme because it was used "for identifying investors in the wire fraud scheme." (Plea Agreement, ¶ 3 at 5.) Investor funds obtained through wire fraud were then used to pay CF employees working in that same building. (Plea Agreement, ¶ 3 at 5.)

---

[1] The RICO count is asserted "Against All Defendants" DE# 1, Count VII, ¶¶ 198–213), and the Complaint defines "Defendants" to include Chestnut Holdings. DE# 1, ¶ 1.

The Transferee Defendants attempt to distinguish Chestnut Holdings from the other defaulting entities by noting it is not specifically named in the veil-piercing section of the Revised Findings of Fact. DE# 140 at PageID 1771. But Chestnut Holdings' RICO liability does not depend on veil piercing. It depends on whether Frost conducted the affairs of an enterprise—which included Chestnut Holdings—through a pattern of racketeering activity. The Complaint alleges exactly that. DE# 1, ¶¶ 198–213. And upon default, those allegations are taken as true.

### c. The Deposition Testimony Cited by Transferee Defendants Does Not Preclude Default Judgment.

The Transferee Defendants rely heavily on deposition excerpts from Plaintiffs Harding and Strobl in which they testified they had no documents showing Chestnut Holdings was liable for repayment of their investments. DE# 140 at PageID 1772. This argument conflates knowledge of a specific entity's involvement with the legal basis for that entity's liability.

Individual investor-plaintiffs' lack of personal knowledge about the corporate structure behind the fraud does not negate the legal theories by which Chestnut Holdings is liable. The very purpose of RICO and alter-ego liability is to reach entities that served as instrumentalities of an enterprise even when individual victims cannot trace funds to specific entities. Plaintiffs' candid deposition testimony reflects the success of Frost's concealment, not the absence of Chestnut Holdings' involvement.

Moreover, since those depositions were taken, Frost has entered a federal plea agreement admitting to the core conduct underlying this litigation. That plea

6

agreement confirms what individual investors could not know: that Frost operated a multi-entity scheme using his accounting firm—housed in the building owned by Chestnut Holdings—as a central node for recruiting investors and laundering the proceeds of wire fraud. (Plea Agreement, ¶ 3 at 4–6.) The Plea Agreement's admissions constitute evidence that supersedes Plaintiffs' earlier lack of documentary proof.

### III. Conclusion.

For the foregoing reasons, Plaintiffs respectfully submit that the Complaint's well-pleaded allegations, deemed admitted upon entry of default, together with the corroborating admissions in Jonathan Frost's federal plea agreement, establish a sufficient basis for entry of default judgment against Chestnut Holdings, LLC. The Transferee Defendants' arguments improperly demand a level of particularized proof that is neither required on a motion for default judgment nor consistent with the Court's obligation to accept well-pleaded allegations as true.

Plaintiffs respectfully request that the Court enter default judgment against Chestnut Holdings as part of the Defaulting Defendants, jointly and severally, as set forth in Plaintiffs' Revised Proposed Findings of Fact and Conclusions of Law (DE# 137).

7

Dated: April 13, 2026

Respectfully submitted,

By: */s/ Benjamin A. Gastel*
Benjamin A. Gastel (BPR #28699)
Anthony A. Orlandi (BPR #33988)
**Herzfeld, Suetholz, Gastel, Leniski
 & Wall, PLLC**
1920 Adelicia St., Suite 300
Nashville, TN 37212
Ph: (615) 800-6225
Fax: (615) 994-8625
ben@hsglawgroup.com
tony@hsglawgroup.com

*Attorneys for Plaintiffs*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of April, 2026, the foregoing document was electronically filed with the Clerk of Court to be served by either U.S. Mail, pre-paid postage, or by way of the Court's electronic filing system (CM/ECF) upon the following:

J. Michael Holloway **(Via CM/ECF)**
Mark W. Litchford **(Via CM/ECF)**
Christopher M. Gant **(Via CM/ECF)**
Litchford, Pearce & Associates
P.O. Box 8127
Chattanooga, TN 37414
Email: michael@lpafirm.com
Email: mark@lpafirm.com
Email: chris@lpafirm.com

*Counsel for The Well Fund LLC*

Cara J Alday **(Via CM/ECF)**
Gary R Patrick **(Via CM/ECF)**
Lance W Pope **(Via CM/ECF)**
Patrick, Beard, Schulman & Jacoway
537 Market Street, Suite 300
Chattanooga, TN 37402
Email: calday@pbsjlaw.com
Email: gpatrick@pbsjlaw.com
Email: lpope@pbsjlaw.com

*Counsel for Steven Frost, Lisa Frost, and Joseph Investments, LLC*

Jonathan Frost **(Via U.S. Mail)**
2457 Dogwood Grove Cir
Signal Mountain, TN 37377

ROI Fund I, LLC **(Via U.S. Mail)**
c/o Jonathan Frost

9

1413 Chestnut St., Suite 401
Chattanooga, TN 37402

ROI Fund II, LLC **(Via U.S. Mail)**
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

ROI Fund III, LLC **(Via U.S. Mail)**
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

ROI Fund IV, LLC **(Via U.S. Mail)**
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

Croft & Frost, PLLC **(Via U.S. Mail)**
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

Chestnut Holdings, LLC **(Via U.S. Mail)**
c/o Jonathan Frost
1413 Chestnut St., Suite 401
Chattanooga, TN 37402

Rhino Onward International, LLC **(Via U.S. Mail)**
c/o Sandeep Basran
2543 N. Milwaukee Ave., 2nd Fl
Chicago, IL 60647

Scorpio Ref, LLC **(Via U.S. Mail)**
c/o Sandeep Basran
2543 N. Milwaukee Ave., 2nd Fl
Chicago, IL 60647

*/s/ Benjamin A. Gastel*
Benjamin A. Gastel

10